IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LARRY E. MELTON, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| PLUG POWER INC., ANDREW MARSH, PAUL B. MIDDLETON, DAVID MINDNICH, and MARTIN D. HULL, | |
| Defendants. | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS**

Plaintiff Larry E. Melton ("Plaintiff"), by and through his counsel, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Plug Power Inc. ("Plug" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I.      **NATURE OF THE ACTION AND OVERVIEW**

1.      This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Plug common stock between August 9, 2022, and March 1, 2023, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a)

1

of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2. Plug is a hydrogen fuel cell company that develops power systems for use in electric vehicles, stationary power units, and other purposes.

3. The Class Period begins on August 9, 2022, to coincide with the publication of Plug's financial results for the second quarter of 2022, when Defendants assured investors that the Company had a "Strong Business Outlook" and touted a $15 billion sales funnel. Defendants also emphasized that the Company's supply chain was strong—with the Company's Chief Executive Officer stating that he did "not foresee supply chain issues this year"—and that Plug's rapidly growing inventory was simply attributable to the substantial growth the Company would experience in the second half of 2022. Consistent with these representations, Defendants projected that the Company would generate 2022 revenue between $900 million and $925 million, representing approximately 80% year-over-year growth.

4. Just a few months later, on October 14, 2022, investors began to learn the truth about Plug's prospects when the Company warned that full-year revenue could be 5% to 10% lower than previously projected. Defendants attributed the revenue revision to "some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues." On this news, the price of Plug common stock declined $1.20 per share, or more than 6%, from a close of $19.23 per share on October 13, 2022, to close at $18.03 per share on October 14, 2022.

5. About three weeks later, on November 8, 2022, the Company reported its financial results for the third quarter of 2022, reporting a decrease in gross margins and a further increase in inventory levels. On this news, the price of Plug common stock declined $0.20 per share, or

more than 1%, from a close of $14.81 per share on November 8, 2022, to close at $14.61 per share on November 9, 2022.

6. On January 25, 2023, despite Defendants' previous assurances that revenue growth would be at least 60% on a year-over-year basis, Plug revealed that it now expected to generate year-over-year revenue growth of just 45% to 50% in 2022. Defendants explained that this disappointing result "had to do with the fact that the new products came out a little slower than we hoped," as Plug's "[m]anufacturing had a few more issues than we hoped" and "added . . . complexity to supply chain." Following this revelation, the price of Plug common stock declined $0.97 per share, or approximately 6%, from a close of $16.34 per share on January 25, 2023, to close at $15.37 per share on January 26, 2023.

7. Then, after the market closed on March 1, 2023, the Company announced its financial results for the fourth quarter and full year 2022, including full-year revenue growth of just 40% on a year-over-year basis—missing even the reduced guidance range provided just a few weeks prior. On this news, the price of Plug common stock declined $0.88 per share, or more than 6%, from a close of $14.21 per share on March 1, 2023, to close at $13.33 per share on March 2, 2023.

8. This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants'

statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock when the truth was revealed, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.   JURISDICTION AND VENUE

10. Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Plug is incorporated in this District.

13. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.  PARTIES

14. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Plug common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

15. Defendant Plug is a Delaware corporation with principal executive offices at 968 Albany Shaker Road, Latham, New York, 12110.

16. Defendant Andrew Marsh ("Marsh") is, and at all relevant times was, the Company's Chief Executive Officer.

17. Defendant Paul B. Middleton ("Middleton") is, and at all relevant times was, the Company's Chief Financial Officer.

18. Defendant David Mindnich ("Mindnich") is, and at all relevant times was, the Company's Executive Vice President of Global Manufacturing.

19. Defendant Martin D. Hull ("Hull") is, and at all relevant times was, the Company's Controller and Chief Accounting Officer.

20. Defendants Marsh, Middleton, Mindnich, and Hull are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Plug's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

22. Plug and the Individual Defendants are collectively referred to herein as "Defendants."

## IV. SUBSTANTIVE ALLEGATIONS

### A. Background

23. Plug, a Delaware corporation with principal executive offices in Latham, New York, develops hydrogen fuel cell power systems for use in electric vehicles, stationary power units, and other purposes. Among the Company's products are hydrogen electrolyzers, which use electricity to split water into hydrogen and oxygen so the hydrogen can be stored for later use. Plug's common stock trades on the NASDAQ under the ticker symbol "PLUG."

### B. Defendants' False and Misleading Statements

24. The Class Period begins on August 9, 2022, to coincide with the publication of Plug's financial results for the second quarter of 2022. In a letter to shareholders, Defendants touted Plug's "Strong Business Outlook" and assured investors that the Company's "[g]rowth outlook remains robust with over $15 billion sales funnel."

25. Defendants explained that the Company's backlog for electrolyzers was "already ahead of our targeted booking and backlog . . . for the year," highlighting several recent large orders, and represented that the Company "expect[s] to land two pedestal customers in Europe this year." Additionally, Defendants noted that the Company was "focused on building world class manufacturing and supply chain capabilities," and reaffirmed the Company's 2022 revenue guidance of between $900 million and $925 million, representing growth of approximately 80% year over year.

26. During the Company's quarterly earnings conference call the same day, Defendants further assured investors that the Company had a reliable supply chain that would support substantial growth. For example, in response to an analyst's question about the Company's

6

"supply chain and . . . preparedness to really respond to how big this could get and how fast you guys want to move," Defendant Marsh explained:[1]

> I would kind of first take a step back and say there's actually 3 ingredients to that supply chain. One actually has to do with design. And when I think about our PEM electrolyzer design, we envision that sooner rather than later, a staff today will actually have about double the power, which actually simplifies, really, our supply chain. So a lot of that happens with can you design the product simpler. And that's continuing to go through our business.
>
> Probably the more important one is, are we adding the right people. ***And I think the reasons that we don't—not foresee supply issues this year is because the leadership we've put in place***. As you know, I've hired Dave Mindnich [from] Tesla who drove their Reno facility to make sure Tesla vehicles could be delivered. That same sort of mentality about how to develop those strategic relationships with suppliers, we've been working on for a long time.
>
> And third, look, a lot about this whole integrated supply chain is your own manufacturing capability. And the facility we built in Rochester, the facility we've built in Vista, which now we can occupy, I think, dramatically changes everything. ***So we have sophisticated people who have been driving our supply chain for the past years***. ***We have designs, which we're looking to reduce the number of parts, which help us with cost and supply chain. And third, we have the facilities***.
>
> And look, our goal is to continue to have that leadership position.
>
> I don't want to downplay that—and I'm not trying on this call, [to] downplay that we don't fight supply chain issues every day. We do. But that is—the first item I get in the morning is what's going on and do they need me to make a call. So it is an everyday effort and it is more complicated. ***But I would say that it's less intense than it was***.

27.     Marsh further assured investors that the Company was "adding new customers that can help mitigate any slowdown" that was occurring in the global economy, and stated that he had "not seen a reduction" in demand for Plug's products and services.

---

[1]     Unless otherwise noted, all emphasis is added.

28. Similarly, Defendant Middleton emphasized that the Company's margins would improve in the second half of 2022 because the Company was "moving quickly to ramp the electrolyzer sales going from kind of scaling the plant [in the] first half to max production in the short term," as well as "the mix of sales and the growth that we're experiencing."

29. During the conference call, another analyst observed that the Company's inventory had increased dramatically—with the Company reporting nearly $430 million in inventory as of June 30, 2022, up from $269 million in inventory just six months earlier—and asked whether the increase was due to "planned inventory buildup" or "some delay in sales." In response, Middleton assured investors:

> ***It's really anticipation for the second half [of the year]***. I mean, if you look at the sales as we've seen historically, we do about 1/3 in the first half, and we do 2/3 in the second half. It's going to be—we're going to do more sales in the second half than we did almost—well, all of last year. So it's a big push. We're ramping up new facilities and production to support that as well as what we anticipate after in the first part of next year.
>
> ***So that's—I don't see that build continuing on in the second half. I think it will temper, we know it will temper, but it's really driven towards all that growth that we're building for to deliver in the second half***.

30. The above statements identified in ¶¶ 24-29 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

C.     **The Truth Begins to Emerge**

31.    On October 14, 2022, Defendants announced that the Company's "prior full year 2022 revenue guidance of $900-925M could be 5%-10% lower for the year" and attributed this revised guidance to "some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues."

32.    On this news, the price of Plug common stock declined $1.20 per share, or more than 6%, from a close of $19.23 per share on October 13, 2022, to close at $18.03 per share on October 14, 2022.

33.    While some information about the Company's true condition began to surface, Defendants continued to mislead the market.  For example, during a Company symposium on October 19, 2022, Defendants assured investors that this revised guidance still represented substantial growth, with Defendant Middleton explaining that "even at the lower end of what we shared, we would still achieve 60% growth year-over-year."

34.    Defendants also emphasized that the Company was already resolving its supply chain issues, with Defendant Mindnich stating that "we're taking the right steps right now, and we're going to continue to stay ahead of it," and assuring investors that "[o]ur supply chain team and our leader in supply chain is world-class."

35.    The above statements identified in ¶¶ 33-34 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues.  As a result, Defendants' statements about the Company's business,

operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

36. Additional corrective events surfaced. Specifically, on November 8, 2022, the Company reported its financial results for the third quarter of 2022, revealing that—contrary to Defendants' prior claims of substantial growth in the second half of 2022—the Company's gross margins had decreased 3% sequentially, and 2% on a year-over-year basis, and that Plug's inventory levels had further increased to $516 million.

37. In response to the Company's declining margins and growing inventory levels, the price of Plug common stock declined $0.20 per share, or more than 1%, from a close of $14.81 per share on November 8, 2022, to close at $14.61 per share on November 9, 2022.

38. The partial corrective events did not dissuade Defendants from minimizing the risks facing Plug. During Plug's earnings conference call on November 8, 2022, when an analyst expressed concern about the Company's decreasing margins and increasing inventory, Defendant Middleton again assured investors that the Company's inventory buildup was the result of anticipated sales volume in the fourth quarter of 2022, and stated that "[w]e have the fortunate problem of a big growing backlog," and that "we're focused mainly on delivering and growing that and then you optimize." Defendants also reaffirmed the Company's recently updated 2022 guidance.

39. The above statements identified in ¶ 38 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023,

among other issues.  As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

40.     On January 25, 2023, despite Defendants' continued assurances that Plug's revenue would still grow at least 60% year over year and that the Company was addressing its supply chain issues, the Company provided a disappointing business update.  Specifically, Defendants reported that the Company now expected 2022 revenue growth of just 45% to 50% year over year—far below both its original projections of approximately 80% growth year over year and the low end of the Company's updated 60% year-over-year growth range that Defendants reaffirmed less than three months prior.  In explaining the sizable revenue miss, Defendant Marsh explained that "new products came out a little slower than we hoped," as Plug's "[m]anufacturing had a few more issues than we hoped" and "added . . . complexity to supply chain."

41.     On this news, the price of Plug common stock declined $0.97 per share, or approximately 6%, from a close of $16.34 per share on January 25, 2023, to close at $15.37 per share on January 26, 2023.

42.     Just a few weeks later, after the market closed on March 1, 2023, Plug announced disappointing financial results for the fourth quarter and full year 2022, including annual revenue of $701.4 million—representing only 40% year-over-year growth and missing even the reduced guidance the Company had recently provided.

43.     On this news, the price of Plug common stock declined $0.88 per share, or more than 6%, from a close of $14.21 per share on March 1, 2023, to close at $13.33 per share on March 2, 2023.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

44. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Plug common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of Plug, and their families and affiliates.

45. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

46. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a.     Whether Defendants violated the Exchange Act;

    b.     Whether Defendants omitted and/or misrepresented material facts;

    c.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.     Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

    e.     Whether the price of Plug common stock was artificially inflated; and

    f.     The extent of damage sustained by members of the Class and the appropriate measure of damages.

47. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

48. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions. Plaintiff has no interests that conflict with those of the Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## VI. APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

50. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. The omissions and misrepresentations were material;

   c. The Company's common stock traded in an efficient market;

   d. The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

   e. Plaintiff and the Class purchased Plug common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

51. At all relevant times, the market for the Company's common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the

major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII. NO SAFE HARBOR

52. Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII. LOSS CAUSATION/ECONOMIC LOSS

53. Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. The prices of Company common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Plug common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX. <u>SCIENTER ALLEGATIONS</u>

54. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Company common stock during the Class Period.

## X. <u>CLAIMS AGAINST DEFENDANTS</u>

### <u>COUNT I</u>

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

55. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

56. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Company common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

57. Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

60. The Individual Defendants acted as controlling persons of Plug within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular practices giving rise to the securities violations as alleged herein, and exercised the same.

62. As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in

this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act. As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Company common stock during the Class Period.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b. Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Such other and further relief as the Court may deem just and proper.

## XII. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 12, 2023                                           Respectfully submitted,

                                          **DELEEUW LAW LLC**
                                          */s/ P. Bradford deLeeuw*
                                          P. Bradford deLeeuw (DE Bar ID #3569)
                                          1301 Walnut Green Road
                                          Wilmington, DE 19807
                                          Telephone: (302) 274-2180
                                          Facsimile: (302) 351-6905
                                          brad@deleeuwlaw.com

                          **KESSLER TOPAZ**
                            **MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

***Counsel for Plaintiff Larry E. Melton***