## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re PLUG POWER INC. SECURITIES LITIGATION | Case No. 1:23-cv-00409 (JLH) |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND TO STRIKE

Of Counsel:

John J. Clarke, Jr.*
Richard Zelichov*
Yan Grinblat*

* Admitted *pro hac vice*

DLA PIPER LLP (US)
Ronald N. Brown, III (Bar No. 4831)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
302.468.5700
ronald.brown@us.dlapiper.com

*Counsel for Defendant*
  *Plug Power Inc.*

RICHARDS, LAYTON, & FINGER P.A
Rudolf Koch (Bar No. 4947)
Jason J. Rawnsley (Bar No. 5379)
920 North King Street
Wilmington, Delaware 19801
302.651.7700
koch@rlf.com
rawnsley@rlf.com

*Counsel for Defendants*
  *Andrew Marsh, Paul B. Middleton,*
  *David Mindnich, and Sanjay Shrestha*

Dated:  March 13, 2024

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................. 1

I.  THE FAULTY PSLRA NOTICE REQUIRES DISMISSAL
    OR REPUBLICATION. ................................................................................ 3

II. THE COURT SHOULD STRIKE ALL "WITNESS 1" ALLEGATIONS...................... 4

III. THE COMPLAINT IS AN IMPERMISSIBLE "PUZZLE PLEADING." ....................... 4

IV. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE FALSITY. ............................ 6

    A.  The Safe Harbor Applies and Requires Dismissal. .................................. 6

        1.  Accompanied by Meaningful Cautionary Language. ............................... 6

        2.  No Plausible Allegation of Knowing Falsity. ....................................... 11

    B.  Plaintiffs Also Do Not Plausibly Allege Falsity for Other Reasons. .................. 11

        1.  Plaintiffs Abandoned any Claim Based on Margins. ............................. 11

        2.  Plaintiffs Have Not Alleged Falsity for Opinion Statements.................. 12

        3.  The Few Challenged Statements of Present Fact Were Not False.......... 13

V.  PLAINTIFFS HAVE NOT PLEADED A "STRONG INFERENCE"
    OF SCIENTER. ...................................................................................... 15

    A.  There Are No Plausible Allegations of Knowing Falsity. ................................ 15

    B.  Nor Have Plaintiffs Alleged a "Strong Inference" of Reckless Disregard. ........ 18

VI. THE SCHEME AND "CONTROLLING PERSON" CLAIMS ALSO
    SHOULD BE DISMISSED. ......................................................................... 20

CONCLUSION.......................................................................................... 20

Table of Authorities

Page(s)

Cases

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ...........................................................12, 15, 18

*Baker v. MBNA Corp.*,
2007 WL 2009673 (D. Del. July 6, 2007) ...............................................................15

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
896 F. Supp. 2d 1210 (N.D. Ga. 2012) .....................................................................5

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)....................................................................................19

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) ...............................................................................5

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)....................................................................................19

*City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) .................................................................................4, 5

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .........................................................12

*Greenberg v. Bear Stearns & Co.*,
80 F. Supp. 2d 65 (E.D.N.Y. 2000) ...........................................................................4

*Hachem v. Gen. Elec. Inc.*,
2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018)............................................................4

*Halford v. AtriCure, Inc.*,
2010 WL 8973625 (S.D. Ohio Mar. 29, 2010) ..........................................................5

*In re Amarin Corp. PLC Sec. Litig.*,
2021 WL 1171669 (D.N.J. Mar. 29, 2021)...............................................................15

*In re Cancer Genetics, Inc. Sec. Litig.*,
2020 WL 3276740 (D.N.J. Feb. 26, 2020) ...............................................................15

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) .............................................................5, 20

*In re Digital Island Sec. Litig.*,
357 F.3d 322 (3d Cir. 2004)....................................................................................15

ii

Page(s)

*In re: Enzymotec Sec. Litig.*,
   2015 WL 8784065 (D.N.J. Dec. 15, 2015) ...................................................................8, 9

*In re EQT Corp. Sec. Litig.*,
   504 F. Supp. 3d 474 (W.D. Pa. 2020).............................................................................16

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
   2015 WL 4469143 (D.N.J. July 22, 2015)........................................................................6

*In re Horsehead Holding Corp. Sec. Litig.*,
   2018 WL 4838234 (D. Del. Oct. 4, 2018) ........................................................................9

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
   620 F. Supp. 3d 167 (D.N.J. 2022) .............................................................................9, 17

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)......................................................................................7, 15

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ..................................................................4

*In re Measurement Specialties, Inc.*,
   2003 WL 27398420 (D.N.J. Sept. 29, 2003) ..................................................................16

*In re Mylan N.V. Sec. Litig.*,
   2023 WL 3539371 (W.D. Pa. May 18, 2023)..................................................................12

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002)..........................................................................................19

*In re Par Pharm. Sec. Litig.*,
   2009 WL 3234273 (D.N.J. Sept. 30, 2009) ......................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
   1999 WL 34807713 (E.D. Pa. Dec. 21, 1999)..................................................................4

*In re Synchronoss Techs., Inc. Sec. Litig.*,
   2019 WL 2849933 (D.N.J. July 2, 2019).........................................................................18

*In re Teladoc Health, Inc. Sec. Litig.*,
   2023 WL 4351455 (S.D.N.Y. July 5, 2023) ...................................................................10

*Intimateco LLC v. Apparel Distribution, Inc.*,
   2023 WL 7986336 (D.N.J. Nov. 17, 2023) .....................................................................14

*Ito-Stone v. DBV Techs. S.A.*,
   2020 WL 6580776 (D.N.J. Nov. 10, 2020) ......................................................................4

Page(s)

*Johansson v. Ferrari*,
  2015 WL 5000848 (D. Del. Aug. 20, 2015) ...............................................................7

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*,
  2011 WL 2444675 (D. Del. June 14, 2011).............................................................17

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
  437 F.3d 588 (7th Cir. 2006), *vacated and remanded*, 551 U.S. 308 (2007) ...........................8

*Malack v. BDO Seidman, LLP*,
  617 F.3d 743 (3d Cir. 2010).............................................................................11

*Mallozzi v. Innovative Indus. Props., Inc.*,
  2023 WL 6121499 (D.N.J. Sept. 19, 2023) ...............................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006)......................................................................................1

*Moshell v. Sasol Ltd.*,
  2021 WL 3174414 (S.D.N.Y. July 24, 2021) .............................................................5

*N.J. Treas. Dep't v. Cliffs Nat. Res., Inc.*,
  2015 WL 6870110 (N.D. Ohio Nov. 6, 2015) .............................................................5

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016).............................................................................11

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015).....................................................................................12

*Ortiz v. Canopy Growth Corp.*,
  537 F. Supp. 3d 621 (D.N.J. 2021) ......................................................................12

*Pa. v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)............................................................................5

*S.E.C. v. Hug*,
  2022 WL 855659 (D.N.J. Mar. 22, 2022)................................................................20

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2015 WL 3833849 (M.D. Pa. June 22, 2015)...........................................................14

*Shreiber v. Synacor, Inc.*,
  832 F. App'x 54 (2d Cir. 2020) .........................................................................12

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010).............................................................................15

Page(s)

*Takata v. Riot Blockchain, Inc.*,
2023 WL 7133219 (D.N.J. Aug. 25, 2023) .................................................................20

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
396 F. Supp. 3d 413 (E.D. Pa. 2019) ........................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................................15

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
227 F. Supp. 3d 1098 (N.D. Cal. 2017) .......................................................................5

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
2024 WL 863709 (D. Ariz. Feb. 29, 2024).................................................................6

*Williams v. Globus Med., Inc.*,
869 F.3d 235 (3d Cir. 2017)...........................................................................9, 17, 18

*Winer Fam. Tr. v. Queen*,
2004 WL 2203709 (E.D. Pa. Sept. 24, 2007),
*aff'd*, 503 F.3d 319 (3d Cir. 2007) ...........................................................................14

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ...........................................................10, 13, 14, 19

*Wu v. GSX Techedu Inc.*,
2023 WL 2207422 (D.N.J. Feb. 24, 2023) ...............................................................19

*Yoshikawa v. Exxon Mobil Corp.*,
2023 WL 5489054 (N.D. Tex. Aug. 24, 2023)...........................................................20

## Statutes, Rules, and Other Authorities

15 U.S.C. § 78u-4 .......................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(A)(i).......................................................................................3

15 U.S.C. § 78u-4(a)(3)(A)(i)(I) ..................................................................................1

15 U.S.C. § 78u-4(a)(3)(A)(i)(II).................................................................................3

15 U.S.C. § 78u-4(b)(1) ...........................................................................................2, 6

15 U.S.C. § 78u-4(b)(2)(A)........................................................................................15

15 U.S.C. § 78u-5 .....................................................................................................1, 2

15 U.S.C. § 78u-5(c) ....................................................................................................6

v

## PRELIMINARY STATEMENT

The PSLRA was enacted to address perceived abuses in securities fraud class actions, which had "resulted in extortionate settlements, chilled any discussion of issuers' future prospects, and deterred qualified individuals from serving on boards[.]" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006) (citation omitted). Statutory reforms to address these problems included a mandatory notice and lead plaintiff application process to ensure litigation is run by investors rather than law firms; a statutory safe harbor to encourage issuers to provide guidance and other forward-looking statements; a pleading specificity requirement for statements alleged to be fraudulent; and the well-known "strong inference" standard for allegations of scienter. 15 U.S.C. §§ 78u-4, 78u-5. Plaintiffs' opposition brief (D.I. 59) minimizes the significance of these statutory reforms, all of which apply and require dismissal.

*First*, the record shows that plaintiffs' counsel carefully managed the original complaint to manufacture an advantage in the leadership competition mandated by the PSLRA. That initial pleading alleged a class period beginning in August 2022, rather than January 2022, and did not challenge any statements concerning Plug's hydrogen plant construction and production capacity. It is now clear, however, that plaintiffs' counsel had intended to bring claims based on such statements and assert a longer class period even before the first complaint was filed. *See* D.I. 1; *see also* Disavowal Letter (D.I. 49) at 1. Other investors, with potentially greater losses, were not informed of either issue. A statutory safeguard therefore was subverted, warranting dismissal or, at least, a new and untainted notice and lead plaintiff process. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I).

*Second*, plaintiffs' continued reliance on repudiated confidential witness allegations also warrants dismissal. At a minimum, the allegations attributed to "Witness 1" should be ordered stricken with a new complaint to be filed that excises them. That alleged source disavowed *all* allegations attributed to them in the complaint, called those allegations "lies," and rejected the

allegations on their own.  Disavowal Letter at 2-3.  Plaintiffs have no good explanation for this problem and therefore bury the point in their opposition.  *See* Opp. at 32-33.

*Third*, the amended complaint (D.I. 45) is an obvious puzzle pleading that violates statutory requirements for pleading specificity.  15 U.S.C. § 78u-4(b)(1).  In it, plaintiffs challenge dozens of statements over a fourteen-month period while repeating a formulaic list of reasons for their supposed falsity.  The opposition, which repeatedly asserts that defendants have misunderstood plaintiffs' claims, only underscores the mischief that this pleading tactic permits.  Dismissal and repleading to meet the required level of specificity is the appropriate remedy.

*Fourth*, the complaint does not plead falsity.  Most centrally, challenged statements, primarily concerning year-end revenue and hydrogen production goals, are expressly protected by the statutory safe harbor.  15 U.S.C. § 78u-5.  To overcome the safe harbor, plaintiffs were required to show *both* that the statements were not accompanied by meaningful cautionary language *and* that they were knowingly false (recklessness is not sufficient).  Plaintiffs have not satisfied either requirement.  Their contention that the statements were really statements of present fact is just another illustration of how the complaint is an incomprehensible puzzle pleading.

*Finally*, the opposition demonstrates plaintiffs' failure to allege a "strong inference" of scienter.  Plaintiffs admit they have not alleged any motive to defraud, meaning that their burden to allege scienter is even more demanding.  The complaint alleges that Plug provided regular updates to its year-end goals, which defeats any plausible inference that the defendants intended to defraud anyone.  Allegations attributed to unnamed "witnesses" who had no meaningful contact with any defendant and no role in financial reporting do not alter that conclusion.

The amended complaint exhibits the hallmarks of abusive securities litigation that led to the enactment of the PSLRA three decades ago.  The complaint does not plead an actionable claim and should be dismissed in its entirety.

**I.      THE FAULTY PSLRA NOTICE REQUIRES DISMISSAL OR REPUBLICATION.**

Knowing omissions from the PSLRA notice published by plaintiffs' counsel at the beginning of this case skewed the lead plaintiff application process.  That requires dismissal of the claims and longer class period that were added after lead plaintiffs were chosen, or, at minimum, a republished notice followed by a new lead plaintiff process.  *See* Defs. Br. (D.I. 57) at 8-9.

The PSLRA mandates that a plaintiff who files a new securities class action must publish a notice "advising members of the purported plaintiff class" of the pendency of the action, "the *claims asserted therein*, and *the purported class period*."  15 U.S.C. § 78u-4(a)(3)(A)(i) (emphasis added).  No later than sixty days thereafter, any member of the putative class "may move the court to serve as lead plaintiff," *id.* § 78u-4(a)(3)(A)(i)(II), with a statutory presumption favoring the appointment of the investor(s) having "the largest financial interest in the relief sought by the class," *id.* § 78u-4(a)(3)(B)(iii).

The notice published in this case stated that the alleged class period ran from August 9, 2022 to March 1, 2023 and that the claims asserted were based on Plug being "unable to effectively manage its supply chain and product manufacturing[.]"  D.I. 12-1.  It did not mention any claims arising before August 9, 2022 or discuss claims based on statements about Plug's anticipated hydrogen production.  *Id.*  Behind the scenes, however, plaintiffs' counsel planned to assert those claims all along.  Plaintiffs' investigator interviewed "Witness 1" months before the initial complaint (and the press release) and allegedly heard their opinion that Plug's hydrogen production targets were "hilariously off" even before the start of the class period alleged in the initial complaint, Disavowal Letter at 1-2, which (along with other disavowed allegations) plaintiffs later featured in the amended complaint.  *See* ¶¶ 7(b), 46, 84, 140(c), 153(c), 179(c), 188(c), 258.

Investors who purchased the Company's common stock before August 2022 never knew those claims – and the longer class period – would be at issue in this case, and they therefore did

3

not have all the facts they could have known in deciding whether to file a lead plaintiff application. This entire category of potential lead plaintiffs was "omitted from the notice procedure." *Ito-Stone v. DBV Techs. S.A.*, 2020 WL 6580776, at *2 (D.N.J. Nov. 10, 2020) (cited by plaintiffs). The Court therefore should dismiss all new claims or, at a minimum, should require a new notice and lead plaintiff process. *See Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018) (requiring republication where notice contained shorter class period and omitted "substantial allegations concerning GE's LTC business").[1]

## II.   THE COURT SHOULD STRIKE ALL "WITNESS 1" ALLEGATIONS.

"Witness 1," plaintiffs' primary source for their claims based on Plug's statements concerning its future hydrogen production, "***disavow[ed]" every statement*** attributed to them and stated that "***the information attributed to [them] and to others in the Complaint are 'lies*.'"** Disavowal Letter at 2 (emphasis added). The Court should strike those allegations and order the complaint to be refiled without them. If they are not stricken, the Court should disregard the allegations for purposes of the motion to dismiss.

Plaintiffs cannot avoid the impact of this unnamed source's repudiation of allegations attributed to them merely because the disavowed allegations "match[] the contemporaneous interview notes." Opp. at 32. The source "denied . . . everything that the investigator had reported." *City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 760 (7th Cir. 2013) (affirming dismissal). Nor does this require the Court to resolve "fact questions" on a motion to dismiss. Opp. at 33. "Either [Witness 1] had told the investigator the

---

[1] Plaintiffs' citations are inapposite because the class periods were enlarged based on events after the initial complaints, and no new claims were asserted. *See Ito-Stone*, 2020 WL 6580776, at *2 (D.N.J. Nov. 10, 2020); *In re Rite Aid Corp. Sec. Litig.*, 1999 WL 34807713, at *1 (E.D. Pa. Dec. 21, 1999); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *23 (C.D. Cal. May 23, 2008). In *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000), the amended complaint did not expand the class period or add new claims at all.

same thing he said in [the Disavowal Letter], which would . . . expose the investigator as a liar, or he had made opposite assertions on the two occasions, in which event *he* was the liar[.]"  *Boeing*, 711 F.3d at 760.

Ironically, plaintiffs make several factual assertions in their opposition that do not appear in their own allegations.  The complaint does not allege that "Witness 2" or "Witness 3" based their supposed allegations on information from "Witness 1."  *Compare* Opp. at 4, 24, 32 (asserting statements from Witness 2 were based on hearsay from Witness 1) *with* ¶ 91 ("Witness 2 explained that one member of the Project Management Team"); *compare* Opp. at 4 ("Witness 3 recounted Witness 1 saying") *with* ¶ 92 ("Witness 3 similarly recalled a member of the Project Management team").  A plaintiff cannot amend its complaint in arguments made in its opposition to a motion to dismiss.  *Pa. v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

The disavowal means that allegations attributable to "Witness 1" are not entitled to the presumption of truth.  *See Boeing*, 711 F.3d at 760 (affirming dismissal where discredited CW statements were sole basis for securities claims); *Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (affirming dismissal where CW "expressly disclaimed the allegations attributed to him in the complaint"); *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1228 (N.D. Ga. 2012) (on reconsideration, granting motion to dismiss with prejudice based on CW's complete recantation).[2]

---

[2] Plaintiffs mistakenly rely on *In re Par Pharm. Sec. Litig.*, 2009 WL 3234273, at *11 (D.N.J. Sept. 30, 2009), where a CW "d[id] not deny making any of the statements attributed to her[.]"  Another citation concerned a motion for reconsideration after a motion to dismiss was denied.  *Moshell v. Sasol Ltd.*, 2021 WL 3174414, at *14 (S.D.N.Y. July 24, 2021).  In other cases, CWs recanted after contact from the defendants, which did not occur here, might have affected their decision.  *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *10 (D.N.J. Aug. 8, 2018)*; Union Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1099 (N.D. Cal. 2017); *N.J. Treas. Dep't v. Cliffs Nat. Res., Inc.*, 2015 WL 6870110, at *4 (N.D. Ohio Nov. 6, 2015); *Halford v. AtriCure, Inc.*, 2010 WL 8973625, at *3 (S.D. Ohio Mar. 29, 2010).

**III.    THE COMPLAINT IS AN IMPERMISSIBLE "PUZZLE PLEADING."**

Plaintiffs make no serious attempt to refute defendants' point that the complaint is an improper puzzle pleading. *See* Defs. Br. at 9-10; Opp. at 31. Instead, as predicted, plaintiffs attempt to use their pleading failure to their advantage by asserting that defendants misunderstood their claims. *See, e.g.*, Opp. at 7-12, 23, 27, 31. To the contrary, plaintiffs are reinventing their claims on-the-fly in an attempt to avoid dismissal. Courts routinely dismiss similar complaints for this reason alone. Defs. Br. at 9 (collecting cases). Indeed, only two weeks ago, another federal court dismissed a substantially similar complaint filed by the same law firm against Carvana Co. on this ground. *See United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2024 WL 863709, at *9 (D. Ariz. Feb. 29, 2024) (dismissing complaint as puzzle pleading with order to replead).[3]

**IV.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE FALSITY.**

**A.    The Safe Harbor Applies and Requires Dismissal.**

Plaintiffs do not dispute that nearly all of the challenged statements were forward-looking. Defs. Br. at 12-13; *see* Opp. at 13-16. These statements cannot be the basis for liability because they were "accompanied by meaningful cautionary language," and plaintiffs cannot establish actual knowledge of falsity as to any of them. *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at *14 (D.N.J. July 22, 2015) (citing *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)); *see* 15 U.S.C. § 78u-5(c).

**1.    Accompanied by Meaningful Cautionary Language.**

The opposition cherry-picks snippets from detailed cautionary statements provided by the Company to suggest that its risk disclosures were not "meaningful." *See* Opp. at 17-21. The

---

[3] Plaintiffs have not cited any decision from the Third Circuit permitting a securities complaint to use a "single set of reasons" to allege why various challenged statements were false. Opp. at 32 n.24. That approach disregards the statutory specificity requirement imposed by the PSLRA. 15 U.S.C. § 78u-4(b)(1).

statements as a whole belie this argument.  The cautionary language Plug provided was "substantive and tailored" to the specific forward-looking statements challenged in the complaint. *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 256 (3d Cir. 2009); *see Johansson v. Ferrari*, 2015 WL 5000848, at *8 (D. Del. Aug. 20, 2015) (citing warnings as to "difficulty of commercializing" product and "gaining market acceptance"); Defs. Br. at 15 (collecting cases).

With respect to revenue forecasts, the centerpiece of plaintiffs' claims, Plug warned:

- [W]e will continue to incur net losses until we can produce sufficient revenue to cover our costs.  We anticipate that we will continue to incur losses until we can produce and sell our products and services on a large-scale and cost-effective basis. We cannot guarantee when we will operate profitably, if ever.

- We may not be able to expand our business or manage future growth. . . .  We may not be able to achieve our growth strategy and increase production capacity as planned during the foreseeable future.

- Our ability to source parts and raw materials from our suppliers could be disrupted or delayed in our supply chain which could adversely affect our results . . .

- A slowdown, delay, or reduction in a customer's orders could result in . . . unexpected quarterly fluctuations in our operating results.

Exh. 6 (D.I. 58-6) at 16-17, 20, 24-25.  The complaint alleges that the Company fell short of its 2022 revenue goal precisely because these risks actually materialized.  *See* ¶¶ 160, 175, 193 (challenges for fuel cell and electrolyzer manufacturing operations, including due to supply chain issues); *see id.* ¶¶ 144, 211, 219, 229 (similar supply chain issues).

Similarly, concerning hydrogen plant construction and production goals, Plug warned:

- [Plug] is developing and constructing green hydrogen production facilities at locations across the United States and Canada.  Our ability to successfully complete and operate these projects is not guaranteed.  These projects will impact our ability to meet and supplement the hydrogen demands for our products and services, for both existing and prospective customers.  Our hydrogen production projects are dependent, in part, on the Company's ability to meet our internal demand for electrolyzers . . .

- The timing and cost to complete the construction of our hydrogen production projects are subject to a number of factors outside of our control and such projects may take longer and cost more to complete and become operational than we expect.

7

Exh. 6 (D.I. 58-6) at 4, 16; *see also id.* at 4, 16-17, 19-21.  The goals discussed in the challenged statements allegedly were not met for the same reasons Plug warned might arise.  *See* ¶¶ 153, 179, 188 ("the construction of Plug's hydrogen plants all suffered from extensive delays and cost overruns, rendering the Company's hydrogen production targets, and particularly its 2022 liquid hydrogen production target, unachievable"); *see also id.* ¶¶ 182, 221 (similar).[4]

Plaintiffs mistakenly assert that the Company's risk disclosures were not adequate because "they described as hypothetical risks that had already materialized[.]"  Opp. at 18.  That cannot be squared with the timing of Plug's disclosures.  Plug included risk factors in its Form 10-KA filed on May 14, 2021 – which pre-dates the alleged class period and is not challenged in the complaint.  *See* Exh. 1 (D.I. 58-1).  The Company provided new risk factor disclosures in its Form 10-K filed on March 1, 2022.  *See* Exh. 6 (D.I. 58-6).  The complaint does not include any particularized allegations pre-dating these disclosures that call them into question.

Even plaintiffs' dubious "confidential witness" allegations do not conflict with the risk factor disclosures as of the time they were made.  The complaint alleges "Witness 1" told management that hydrogen production targets were "way off" in May or June 2022 – months *after* the Form 10-K for year-end 2021.  ¶ 84.  Similarly, "Witness 2" speculated that "senior management knew by June or July of 2022" that hydrogen production estimates were "impossible."  ¶ 85.  "Witness 5" allegedly described supply chain shortages in "early summer 2022."  ¶ 97.  "Witness 14" allegedly said push outs of customer orders began "in March 2022."

---

[4] The disclosures here were far more specific than those in plaintiffs' citations.  *See Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 599 (7th Cir. 2006) (generalized warning of potential "downturn in the telecommunications industry" did not match actual risk of problems with two specific products), *vacated and remanded*, 551 U.S. 308 (2007); *In re: Enzymotec Sec. Litig.*, 2015 WL 8784065, at *11 (D.N.J. Dec. 15, 2015) (warning of "significant and increasing government regulations" insufficient where actual risk was specific new regulation affecting manufacturing in China, which was enacted before the risk disclosure was issued).

¶ 118. And "Witness 5" allegedly said "it was in the summer of 2022 when Plug employees started seeing the changes to the [Gen Drive unit] Production Plan." ¶ 125.

Putting aside all of the other problems with these allegations, including that "Witness 1" repudiated all allegations attributed to them, the complaint does not plead facts to support *any* inference that risks had materialized by the time the Company made its risk factor disclosures. "[T]his is not . . . a case" where the hypothetical risks in Plug's disclosures "ha[d] already come to fruition." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 242 (3d Cir. 2017) (cited by plaintiffs) (complaint did not allege sales were adversely affected "at the time the risk disclosures were made"); *see Mallozzi v. Innovative Indus. Props., Inc.*, 2023 WL 6121499, at *8 (D.N.J. Sept. 19, 2023) (plaintiffs did not plead with particularity "how those specific Risk Warnings [were] false or misleading when they were made").[5]

Plaintiffs' contention that the risk factor warnings were "not updated," Opp. at 19, ignores their own allegations that the Company revised its year-end goals during the class period. The complaint acknowledges that Plug updated its revenue goal in October 2022 and "attributed this revised guidance to 'some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues,'" ¶ 199, and further revised the goal in January 2023 as developments continued, ¶¶ 227-28. Similar updates were made to hydrogen production goals. ¶¶ 137-39, 185-86, 203; *see also* Exh. 15 (D.I. 58-5). Plug also provided updates concerning manufacturing production at its Rochester facility. *See* Exh. 10 (D.I. 58-10) at 11 (2.5 gw/year to

---

[5] In contrast, in the cases plaintiffs cite, events already had occurred when risk factors were issued. *See, e.g.*, *Enzymotec*, 2015 WL 8784065, at *11 (adverse regulation took effect six weeks before prospectus published); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 192 (D.N.J. 2022) (FDA guidance predated risk disclosure by several months); *In re Horsehead Holding Corp. Sec. Litig.*, 2018 WL 4838234, at *13 (D. Del. Oct. 4, 2018) (specific fact allegations showed issue predated risk disclosure), *report adopted*, 2019 WL 1409454 (D. Del. Mar. 28, 2019); *see also* Opp. at 19 n.8 (collecting cases with similar facts).

9

100 mw/month); Exh. 15 (D.I. 58-15) at 19 (goal pushed into 2023). In other words, when the risks that Plug cautioned about materialized, Plug revised its year-end targets to account for the materialization of those risks.

Nor did Plug's meaningful risk factor disclosures become unmeaningful because some of the possible risks later materialized. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) ("these challenged statements contain no explicit or implicit representation that [the company] had *not* already experienced such issues").[6] Investors were warned that if *further* supply chain difficulties or construction delays occurred, even Plug's *updated* forecasts could prove to be inaccurate. *See id.* at 1195-96 (disclosure of problems deemed to update risk factor disclosures); *In re Teladoc Health, Inc. Sec. Litig.*, 2023 WL 4351455, at *9 n.8 (S.D.N.Y. July 5, 2023) ("plaintiff argues that these risk disclosures were 'insufficient and themselves misleading because such risks had already materialized'" but "Teladoc repeatedly disclosed the impact that competitive pressure was having on the Company's financials" and "lowered its financial projections in part to account for that competitive pressure").

Finally, plaintiffs are simply wrong in asserting that no cautionary language applies to challenged statements made on January 19, 2022. Opp. at 17. In their motion, defendants pointed to risk factor disclosures in Plug's Form 10-KA from May 2021 setting forth detailed risk disclosures concerning: potential supply chain challenges, Exh. 1 (D.I. 58-1) at 14-15; its ability to source parts, *id.* at 15; challenges to future profitability, *id.* at 18; challenges to developing hydrogen infrastructure, *id.;* and barriers to the Company's ability to manage future growth, *id.* at

_____

[6] Plaintiffs cannot distinguish *Tesla*. They claim that the risk warnings in that case were sufficient because Tesla acknowledged it "had already experienced" such challenges. Opp. at 20 n.9. However, Plug *also* cautioned that it already "experienced supply chain issues," Exh. 17 (D.I. 58-17) at 20; *see also* Exh. 11 (D.I. 58-11) at 1; ¶¶ 135, 148, 159, 167, 169, 170, 176, 186, 192, 199, 210, 228, 237-38, and provided updates throughout the class period in which it extended dates by which it hoped it would achieve objectives and lowered its year-end revenue goal.

21-22.  Given that defendants also cited and quoted from similar disclosures from the Form 10-K filed in March 2022, *see* Defs. Br. at 14-15, it strains credulity for plaintiffs to suggest they were unable to identify the relevant disclosures in the cited pages.

"The securities laws . . . were not intended to create a scheme of investors' insurance or to regulate directly the underlying merits of various investments."  *Malack v. BDO Seidman, LLP*, 617 F.3d 743, 752 (3d Cir. 2010).  The PSLRA added the safe harbor to protect issuers and their officers against precisely this sort of opportunistic litigation.

### 2.    No Plausible Allegation of Knowing Falsity.

Under the safe harbor, all of plaintiffs' claims based on forward-looking statements should be dismissed based on the meaningful and detailed cautionary language already discussed. Plaintiffs are again mistaken in suggesting they can escape application of the safe harbor through their assertion that the forward-looking statements "were made with 'actual knowledge' that they were false[.]" Opp. at 16.  That is not how the statute works.  *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 491 (3d Cir. 2016) (the "disjunctive statutory test provides two distinct entrances to the safe harbor").  Plaintiffs were required to plausibly allege *both* the absence of meaningful cautionary language *and* knowing falsity.  They have done neither.  *See infra* at 15-20 (discussing lack of plausible allegations of scienter).

### B.    Plaintiffs Also Do Not Plausibly Allege Falsity for Other Reasons.

### 1.    Plaintiffs Abandoned any Claim Based on Margins.

The opposition does not meaningfully respond to defendants' points that plaintiffs failed to plead either falsity or scienter for statements concerning the Company's future margins.  *See* Defs. Br. at 13-14, 20, 29-30.  Plaintiffs therefore have abandoned any such claims.  This is unsurprising.  As the complaint acknowledges, Plug disclosed it did not expect to see gross margin improvements until after the alleged class period.  *See* ¶ 150.

11

### 2.    Plaintiffs Have Not Alleged Falsity for Opinion Statements.

With limited exceptions, plaintiffs concede that challenged statements concerning Plug's year-end goals and other projections were opinions subject to *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015).  Opp. at 21-22; *see Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020) ("expectations and projections for the future[] were quintessential opinion statements").

Plaintiffs again misstate the law in contending that opinions can still be actionable if "defendants were aware of contradictory internal forecasts."  Opp. at 12 (citing *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *4 (D. Del. Feb. 7, 2020)).  In *Omnicare*, the Supreme Court rejected such a rule, holding that "[a]n opinion statement . . . is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way."  575 U.S. at 189-90. To state a claim, a plaintiff challenging an opinion statement on an omission theory must show that "undisclosed fact[s] made it ***impossible*** for the speaker's opinion to be correct."  *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at *13 (W.D. Pa. May 18, 2023) (emphasis added).[7]

The complaint does not come close to meeting that demanding test.  Allegations that some former employees had different opinions about the timing for construction of hydrogen plants do not render "misleading" any challenged opinion statements about that issue.  *Omnicare*, 575 U.S. at 190 (opinion statement not "misleading" just because one employee had a different view, even if their "position ultimately proved correct").  There are no plausibly alleged facts supporting a

---

[7] In cases relied on by plaintiffs, unlike here, the complaint pleaded specific undisclosed contemporaneous facts that materially conflicted with challenged opinions.  *See Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 210 (E.D. Pa. 2021) (injunction and consent decree made completion of construction project impossible); *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 672 (D.N.J. 2021) (defendants did not disclose contract provision that precluded revenue recognition opinion).  Plaintiffs also cite *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *15 (S.D.N.Y. Mar. 25, 2013), which was decided before *Omnicare*.

contention that the Company's goals, as frequently revised during the alleged class period, were ever "impossible to achieve." *Tesla*, 985 F.3d at 1194.

### 3.   The Few Challenged Statements of Present Fact Were Not False.

Plaintiffs are mistaken in contending that phrases in a handful of challenged statements are not subject to the safe harbor because they concerned presently existing facts. Opp. at 7-14.

*First*, plaintiffs challenge a statement in March 2022 that Plug's Georgia facility was "under construction." Opp. at 8-9. But it was, as shown in a photograph from Plug's March 1, 2022 investor letter that is incorporated into the complaint by reference. *See* Exh. 4 (D.I. 58-4) at 5. Plaintiffs' assertions that construction was "delayed," Opp. at 8, or that certain contracts were not issued until later, *id.*, do not conflict with the statement that the facility was "under construction." Their own complaint alleges that pipes were installed there by May 2022. Opp. at 9; *see* ¶ 86. Plaintiffs' unpleaded argument that the pipes were for a different project is mistaken. The Georgia site included both gas and liquid hydrogen production capabilities – indeed, liquid hydrogen is made from gaseous hydrogen. *See* Exh. 4 (D.I. 58-4) at 5; Exh. 9 (D.I. 58-9) at 5; Exh. 12 (D.I. 58-12) at 10; Exh. 16 (D.I. 58-16) at 10; Exh. 18 (D.I. 58-18) at 3.[8]

*Second*, plaintiffs contend that a statement on August 9, 2022 that the Georgia facility was "online" was false, Opp. at 9-10, even while acknowledging that the plant *was* successfully turned on. Plaintiffs claim the relevant test was not enough. *Id.* But as an initial matter, the unnamed source for this allegation conceded they were "unaware whether Plug did anything else between [this successful test] and Plug's announcement that the plant was online." ¶ 89. Plaintiffs claim that the plant must not have been "*materially* in production." Opp. at 9 (emphasis added). "But that is not what the [challenged] statement says." *Tesla*, 985 F.3d at 1193. In the challenged

---

[8] Plaintiffs' challenge to a statement in late January 2022 that the Georgia site was "being constructed," Opp. at 8; *see* ¶ 138, fails for the same reasons.

statement, Plug only confirmed that the plant was online and would *eventually* produce 2.5 TPD of hydrogen. "[T]he complaint does not plead any facts to establish that *that* representation was false" or misleading. *Id.* (rejecting similar attempt to rewrite defendants' statement).

*Third*, and similarly, plaintiffs erroneously contend that a statement on March 1, 2022 that the Rochester, New York gigafactory "had begun production" was false because the factory did not "begin *meaningful* electrolyzer production[.]" Opp. at 11 (emphasis added). But, again, the actual statement did not discuss "meaningful production," and indeed, the statement explained that "[p]roduction ramp really starts heavy in early April[.]" ¶ 158. "Where, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise[.]" *Tesla*, 985 F.3d at 1193. Plaintiffs have not even attempted to do so.

*Finally*, many of the statements concerning Plug's manufacturing capabilities and similar statements are quintessential puffery. Opp. at 10-11; Defs. Br. at 23. Unquantifiable statements like "we have manufacturing capability" and "we know how to make the products," Opp. at 11, are "general expressions of management's belief in its own capabilities" – "corporate puffery on which no reasonable investor would rely." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *30 (M.D. Pa. June 22, 2015); *see Intimateco LLC v. Apparel Distribution, Inc.*, 2023 WL 7986336, at *8 (D.N.J. Nov. 17, 2023) ("generalized assurances of business capability" are puffery). Plaintiffs do not cite any decisions supporting their contrary argument.[9]

_____

[9] Plaintiffs' challenge to statements that Plug made "pretty staggering" progress in building its Slingerlands, New York facility and was "taking the right steps" to resolve supply chain issues, fail for the same reason. Opp. at 12; *see Winer Fam. Tr. v. Queen*, 2004 WL 2203709, at *13 (E.D. Pa. Sept. 24, 2007) ("vague assertion" that company "made 'excellent progress' toward completing" project was "immaterial puffery"), *aff'd*, 503 F.3d 319 (3d Cir. 2007). Supply chain problems did not render these statements false because, as plaintiffs acknowledge, those problems were disclosed throughout the putative class period. *See, e.g.*, ¶¶ 135, 148, 159, 167, 169, 170, 176, 186, 192, 199, 210, 228, 237-38.

## V.    PLAINTIFFS HAVE NOT PLEADED A "STRONG INFERENCE" OF SCIENTER.

The opposition similarly demonstrates plaintiffs' failure to plead facts that would support the required "strong inference" of the requisite intent, 15 U.S.C. § 78u-4(b)(2)(A), which for forward-looking statements is "knowing falsity," *Energy Transfer*, 532 F. Supp. 3d at 209, and for all other statements equates to "culpability [that] closely approaches . . . conscious deception," *In re Digital Island Sec. Litig.*, 357 F. 3d 322 (3d Cir. 2004).  Because **plaintiffs admit they have not alleged that any defendant had a motive to defraud**, Opp. at 23, "their circumstantial evidence of fraud must be correspondingly greater."  *Slayton*, 604 F.3d at 776; *see In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *19 (D.N.J. Mar. 29, 2021).

### A.    There Are No Plausible Allegations of Knowing Falsity.

Contrary to plaintiffs' argument, mere "access" to contrary information – even if plaintiffs had plausibly alleged it, which they have not – is not enough to support a strong inference of scienter.  Opp. at 24; *see Avaya*, 564 F.3d at 275; *Baker v. MBNA Corp.*, 2007 WL 2009673, at *7 (D. Del. July 6, 2007) ("access is not sufficient to meet the 'strong inference' requirement for pleading scienter").  Plaintiffs have not otherwise pleaded facts to support a "strong inference" of knowing falsity that is "cogent and at least as compelling" as a nonculpable inference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

*First*, plaintiffs do not explain how statements in "late April or early May 2021" could raise any question about forward-looking statements about production targets that were made *ten months later*.  Opp. at 24 & n.12.  Allegations attributed to "Witness 2" that "everyone knew" progress on one site was delayed, or that "it was acknowledged internally" that targets were unreachable, ¶ 81; Opp. at 24, are far from particular and do not support a "strong inference" that any defendant knew forward-looking statements concerning future hydrogen production capacity were false when made.  *In re Cancer Genetics, Inc. Sec. Litig.*, 2020 WL 3276740, at *5 (D.N.J.

15

Feb. 26, 2020) (ignoring "generic and conclusory" CW allegations and those "based upon rumor or conjecture"); *see* Defs. Br. at 21-22, 26 (collecting cases).[10]

*Second*, the complaint's allegations about supposed employee resignations are questionable at best, but in any event are no help for plaintiffs.  Opp. at 25.  "Witness 1" vehemently denied that they resigned from the Company and said they "left Plug for another job." Disavowal Letter at 3.  The complaint does not identify any other CW as having allegedly resigned "in protest."  Opp. at 25.  Nor are there allegations that any individual defendant knew about any such resignation or the reasons for it, even if one had occurred and even if those reasons had anything to do with the unsupported allegations in the complaint.  *See* ¶¶ 91, 260-61.[11]

*Third*, the complaint's allegation about a purported internal forecast that differed from Plug's 2022 revenue goal does not withstand the scrutiny mandated by the PSLRA.  Opp. at 26. The allegation is based on equivocal and uncorroborated statements attributed to a single "witness" supposedly based on a company-wide video call that no other source confirmed.  That "witness" could not say when the call occurred (allegedly between "August and late-September"), the issue being discussed ("the company was behind on either its sales or revenue targets"), or "the exact figures."  ¶ 128.  Plaintiffs throw this speculation and uncertainty into their magic hat and pull out conjecture that someone on a call communicated an internal, lowered "revenue" goal of "$700 million," which was the amount finally reported in March 2023.  *Id.*  The "combination of

---

[10] *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474 (W.D. Pa. 2020), cited by plaintiffs, involved far different facts.  The challenged statements concerned obviously existing facts, such as "the amount of acreage" the defendant possessed.  *Id.* at 491.  In addition, the complaint included allegations concerning a third-party letter that contradicted the defendants' statements and was delivered to defendants and filed with the SEC *before* the challenged statements.

[11] In *In re Measurement Specialties, Inc.*, 2003 WL 27398420, at *6 (D.N.J. Sept. 29, 2003), cited by plaintiffs, the CFO resigned and sent a letter to the board disclosing specific problems in the company's financial statements.  There are no similar allegations here.

16

vague allegations by confidential witnesses and the speculative inferences" does not support the required "strong inference." *Becton, Dickinson*, 2021 WL 4191467, at *14.[12]

*Fourth*, the complaint's repeated references to Plug's *disclosed* supply chain challenges and construction delays do not support even a *plausible* inference of knowing falsity because the complaint cannot show that challenged statements failed to take those issues into account. *See* Opp. at 25. According to plaintiffs' own allegations, the Company disclosed its ongoing supply chain problems during 2022, repeatedly updated its revenue and hydrogen production forecasts, and accompanied these updates with explanations. *See* ¶¶ 135, 148, 159, 167, 169, 170, 176, 186, 192, 199, 210, 228, 237-38. The far more compelling inference to be drawn from these allegations is that Plug and the individual defendants believed the forward-looking statements were accurate and updated them as new information was obtained over time. That is not fraud. *See Williams*, 869 F.3d at 246 (where plaintiffs "have not pleaded any facts to support their claim that" defendant did not account for certain issue "in its projections . . . the more plausible inference . . . is that Globus accounted for the change in strategy when it devised its sales projections for the year"). Moreover, revision of projections does not support an inference that the defendants knew "the projections were false when made." *Id.*

Plaintiffs' lack of motive allegations underscores the implausibility of their requested inference of knowing fraud. If plaintiffs' allegations are credited, "it means that [d]efendants embraced failure from the outset. But to what end? Plaintiffs do not plead that insiders sold stock at inflated prices soon after the announcement of the project or point to any other way in which

_____

[12] Plaintiffs are mistaken in their reliance on *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, 2011 WL 2444675 (D. Del. June 14, 2011), where the plaintiffs alleged specific meetings and reports informing the defendant of "declining sales" and "decreasing margins," which were not disclosed. That case also involved substantial stock sales, which the court credited as motive allegations.

17

the [d]efendants profited from the project's difficulties." *Energy Transfer*, 532 F. Supp. 3d at 209-10 (cited by plaintiffs).[13]

### B.    Nor Have Plaintiffs Alleged a "Strong Inference" of Reckless Disregard.

Plaintiffs' scienter arguments for the few challenged statements that were not forward-looking, and therefore could be actionable based on recklessness rather than actual knowledge, depend entirely on impermissible group pleading and vague, undated assertions from unnamed "witnesses" who had no alleged relevant contacts with the individual defendants. This falls far short of pleading the required "strong inference" of scienter.

*First*, unidentified confidential "witnesses" that allegedly disagreed with the timing for future hydrogen production are not sufficient to support the required "strong inference." Opp. at 24-26; 28-30. There is no dispute that most of these alleged witnesses had no interaction with the defendants, much less a relevant one. Their allegations are based, in large part, on hearsay and speculation obtained from other unidentified employees. And nearly all of the allegations are undated and therefore beyond the ability to determine whether there is any conflict between the recollection of the "witness" and the challenged statements. Opp. at 29 & n.20.

These types of "'vague[]' allegations . . . do not state with particularity facts giving rise to a strong inference of scienter where there are no allegations that any defendant knew a particular statement was false when made." *In re Synchronoss Techs., Inc. Sec. Litig.*, 2019 WL 2849933, at *10 (D.N.J. July 2, 2019) (citing *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 154 (3d Cir. 2018)). Further, the fact that plaintiffs have collected their vague and unspecific allegations from seventeen alleged "witnesses" does not alter the analysis. Opp. at 29. "The sheer volume of

---

[13] Allegations that the Company "reduced its internal 2022 fuel cell production projections" also are insufficient. Opp. at 25. "[K]nowledge that sales from one source might decrease is not the same as actual knowledge that the company's overall sales projections are false." *Williams*, 869 F.3d at 246 (citation omitted).

18

confidential sources cited cannot compensate for these inadequacies." *California Pub. Employees'*
*Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155–56 (3d Cir. 2004); *see* Defs. Br. at 17-18, 21-22, 26
(collecting cases).[14]

*Second*, plaintiffs cannot seriously dispute that their scienter arguments are dependent on
impermissible group pleading. Defs. Br. at 24-25. They sweepingly assert that they alleged
"dozens of specific references to allegedly false or misleading statements" and "facts defendants
[purportedly] disregarded," Opp. at 27, but the opposition fails to identify even one of those
supposed allegations. Unable to connect their supposed "witnesses" with any of the individual
defendants, the complaint broadly asserted that various facts were communicated to, or known by,
"senior management" (a term that appears more than 50 times in the complaint). *See, e.g.*, ¶¶ 46,
85, 91, 93, 259, 260. The federal securities laws do not permit this pleading strategy. *Teamsters
Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 446 (E.D. Pa. 2019)
("Although the former employees make vague references to 'corporate' and 'UHS executives,'
there is no testimony from the former employees that states that [defendants] knew about improper
conduct at UHS behavioral health facilities or instructed facilities to commit insurance fraud.");
*see Wu v. GSX Techedu Inc.*, 2023 WL 2207422 (D.N.J. Feb. 24, 2023) (discounting unreliable
CW statements); *see also* Defs. Br. at 30.

In any event, even if these vague allegations were credited, mere "disagreement of some []
employees with the company's interpretation of the [data] is not sufficient" to allege scienter. *City
of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014); *see Tesla*, 985 F.3d at 1194

---

[14] Plaintiffs ignore an entire section of defendants' brief in mistakenly contending that
defendants did not challenge scienter as to non-forward-looking statements. Opp. at 27; *see*
Defs. Br. at 32-33. Plaintiffs' citation to a 2024 press release concerning the completion of a
hydrogen production facility is irrelevant. Opp. at 5 n.2. "[L]iability cannot be imposed on the
basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).

(plaintiffs failed to allege that defendants ever accepted employee's views that goals were "impossible"); *see also* Defs. Br. at 21.

*Finally*, plaintiffs' failure to plead scienter as to any of the individual defendants also refutes their argument that they have pleaded corporate scienter as to the Company.  Opp. at 30.

## VI.    THE SCHEME AND "CONTROLLING PERSON" CLAIMS ALSO SHOULD BE DISMISSED.

Plaintiffs cannot base a scheme liability claim on conclusory allegations of purportedly "manipulative" acts that furthered alleged misstatements.  *Takata v. Riot Blockchain, Inc.*, 2023 WL 7133219, at *11 (D.N.J. Aug. 25, 2023) (scheme claims regularly dismissed where primary purpose and effect of alleged scheme is to make a public misrepresentation).  Moreover, the supposed "scheme" described in the opposition was not deceptive.  Constructing "frames" for equipment while waiting for delivery of that equipment so it can be installed is hardly fraud.  Opp. at 31.  Nor have plaintiffs explained why a plant that has been successfully turned on should not be considered to be "in service."  *Id.*  The complaint also fails to allege "which defendants performed" the allegedly deceptive acts or the effect of the scheme "on the securities at issue." *S.E.C. v. Hug*, 2022 WL 855659, at *8 (D.N.J. Mar. 22, 2022).[15]

Finally, plaintiffs' claim under section 20(a) of the Exchange Act should be dismissed because the complaint does not plead a primary violation.  Defs. Br. at 35.

**CONCLUSION**

For the foregoing reasons and those set forth in the defendants' opening brief, the Court should strike all allegations attributable to "Witness 1" and dismiss the complaint.

---

[15] This case bears no resemblance to *Cognizant*, 2018 WL 3772675, at *4, where a company president allegedly "was directly involved in" a "bribery scheme," or *Yoshikawa v. Exxon Mobil Corp.*, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023), where the complaint alleged knowing "falsification of internal documents."

Dated: March 13, 2024

Of Counsel:

John J. Clarke, Jr.*
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
212.335.4500
john.clarke@us.dlapiper.com

Richard Zelichov*
DLA PIPER LLP (US)
2000 Avenue of the Stars
Los Angeles, California 90067
310.595.3000
richard.zelichov@us.dlapiper.com

Yan Grinblat*
DLA PIPER LLP (US)
444 W. Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000
yan.grinblat@us.dlapiper.com

* Admitted *pro hac vice*

Respectfully submitted,

DLA PIPER LLP (US)


By:   */s/ Ronald N. Brown, III*
      Ronald N. Brown, III (Bar No. 4831)
      ronald.brown@us.dlapiper.com

1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
302.468.5700

*Counsel for Defendant*
 *Plug Power Inc.*


RICHARDS, LAYTON, & FINGER P.A


By:   */s/ Rudolf Koch*
      Rudolf Koch (Bar No. 4947)
      koch@rlf.com
      Jason J. Rawnsley (Bar No. 5379)
      rawnsley@rlf.com

920 North King Street
Wilmington, Delaware 19801
302.651.7700

*Counsel for Defendants*
 *Andrew Marsh, Paul B. Middleton,*
 *David Mindnich, and Sanjay Shrestha*

21