**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re PLUG POWER INC. SECURITIES LITIGATION | Case No. 1:23-cv-00409 (JLH) |

**REPLY BRIEF IN SUPPORT OF ALL DEFENDANTS'
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Of Counsel:

John J. Clarke, Jr.*
john.clarke@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500


Yan Grinblat*
yan.grinblat@us.dlapiper.com
DLA PIPER LLP (US)
444 W. Lake Street
Chicago, Illinois 60606
(312) 368-4000


* Admitted *pro hac vice*


July 18, 2025

DLA PIPER LLP (US)
Ronald N. Brown, III (Bar No. 4831)
ronald.brown@us.dlapiper.com
Peter H. Kyle (Bar No. 5918)
peter.kyle@us.dlapiper.com
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
(302) 468-5700

*Counsel for
 Defendant Plug Power Inc.*

RICHARDS, LAYTON, & FINGER P.A
Rudolf Koch (Bar No. 4947)
koch@rlf.com
Jason J. Rawnsley (Bar No. 5379)
rawnsley@rlf.com
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Counsel for Individual Defendants
 Andrew Marsh, Paul B. Middleton,
 and Sanjay Shrestha*

Table of Contents

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    Plaintiffs Have Not Stated a Claim Based on Forward-Looking Statements. ................... 2

      A.    Goals Were Accompanied by Meaningful, Tailored Cautionary Language.......... 2

      B.    No Allegations that Year-End Goals Were Knowingly Unachievable.................. 7

      C.    Plaintiffs Have Not Alleged that Defendants' Opinions Were False. ................... 7

II.   Plaintiffs Have Not Alleged Falsity for Any Statement of Presently Existing Fact. ......... 8

III.  Plaintiffs Also Have Not Alleged the Required "Strong" Inference of Scienter. ............ 10

      A.    No Scienter for Forward-Looking Revenue and Hydrogen Production
            Goals. ................................................................................................................. 10

      B.    No Scienter for Statements Regarding Plant Construction and Production. ....... 14

      C.    The "Confidential Witness" Allegations Should Be Steeply Discounted. .......... 14

IV.   Plaintiffs Have Not Pled Scheme Liability or Controlling Person Liability. .................. 15

CONCLUSION....................................................................................................................... 15

Table of Authorities

Page(s)

Cases

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189
    (E.D. Pa. 2021) ............................................................................................................... 10

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ....................................................................................... 1, 6

*In re Cancer Genetics, Inc. Sec. Litig.*,
    2020 WL 3276740 (D.N.J. Feb. 26, 2020) ...................................................................... 11

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) ............................................................................ 15

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014) ........................................................................................... 12

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2020 WL 3026565 (D.N.J. June 5, 2020) ....................................................................... 15

*Curran v. Freshpet, Inc.*,
    2018 WL 394878 (D.N.J. Jan. 9, 2018) ............................................................................ 5

*In re Digital Island Sec. Litig.*,
    357 F. 3d 322 (3d Cir. 2004) ..................................................................................... 10, 14

*In re: Enzymotec Sec. Litig.*,
    2015 WL 8784065 (D.N.J. Dec. 15, 2015) ...................................................................... 4, 5

*In re EQT Corp. Sec. Litig.*,
    504 F. Supp. 3d 474 (W.D. Pa. 2020) ........................................................................... 5, 13

*Gallagher v. Abbott Labs*,
    269 F.3d 806 (7th Cir. 2001) ............................................................................................. 7

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
    2015 WL 4469143 (D.N.J. July 22, 2015) ...................................................................... 2, 13

*In re Horsehead Holding Corp. Sec. Litig.*,
    2018 WL 4838234 (D. Del. Oct. 4, 2018) ......................................................................... 5

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ............................................................................................. 9

ii

Page(s)

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
620 F. Supp. 3d 167 (D.N.J. 2022) ...........................................................................5, 12, 13, 15

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)............................................................................................10, 13

*Johansson v. Ferrari*,
2015 WL 5000848 (D. Del. Aug. 20, 2015) ...............................................................................4

*Lungu v. Antares Pharma Inc.*,
2022 WL 212309 (3d Cir. Jan. 22, 2022) ...........................................................................2, 8

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) ....................................................................................................4

*Mallozzi v. Innovative Indus. Props., Inc.*,
2023 WL 6121499 (D.N.J. Sept. 19, 2023) ...............................................................................6

*In re Mylan N.V. Sec. Litig.*,
2023 WL 3539371 (W.D. Pa. May 18, 2023)........................................................................7, 15

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)...................................................................................................11

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ......................................................................................4, 14

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016)..............................................................................................3, 7, 9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................................7, 8

*Ortiz v. Canopy Growth Corp.*,
537 F. Supp. 3d 621 (D.N.J. 2021) ..........................................................................................15

*In re PayPal Holdings Inc. Sec. Litig.*,
2025 WL 325603 (D.N.J. Jan. 29, 2025) ...................................................................................6

*In re PTC Therapeutics, Inc. Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) ..............................................................................14

*Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ...................................................................................................11

iii

Page(s)

*S.E.C. v. Hug*,
   2022 WL 855659 (D.N.J. Mar. 22, 2022)....................................................................15

*Selbst v. McDonald's Corp.*,
   2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) ...........................................................13

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010).................................................................................2, 10

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
   552 U.S. 148 (2008)...............................................................................................15

*In re Synchronoss Techs., Inc. Sec. Litig.*,
   2019 WL 2849933 (D.N.J. July 2, 2019)..................................................................11

*Takata v. Riot Blockchain, Inc.*,
   2023 WL 7133219 (D.N.J. Aug. 25, 2023) .............................................................15

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
   396 F. Supp. 3d 413 (E.D. Pa. 2019) ......................................................................11

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017)...............................................................6, 12, 13, 15

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ....................................................................... *passim*

*Wu v. GSX Techedu Inc.*,
   2023 WL 2207422 (D.N.J. Feb. 24, 2023) ...........................................................11

*Yoshikawa v. Exxon Mobil Corp.*,
   2023 WL 5489054 (N.D. Tex. Aug. 24, 2023)......................................................15

*Zimmerman v. Pepsico, Inc.*,
   836 F.2d 173 (3d Cir. 1988)..................................................................................8

*Zucker v. Quasha*,
   891 F. Supp. 1010 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir. 1996).......................6

## Statutes

15 U.S.C. § 78u-4(b)(2)(A)................................................................................10

15 U.S.C. § 78u-5(c) ...........................................................................................2

## PRELIMINARY STATEMENT

Plaintiffs admit in their opposition brief that almost all the public statements challenged in the complaint are forward-looking and subject to the statutory safe harbor in the Private Securities Litigation Reform Act ("PSLRA").  *See* Pls. Br. at 15.  They also admit that for each of these statements, they were required to allege *both* that the statements were not accompanied by meaningful cautionary language *and* that they were knowingly false.  *See id.*  Plaintiffs do not satisfy either prong of this demanding requirement.[1]

*First*, the PSLRA safe harbor requires dismissal of all claims concerning Plug Power's year-end revenue and hydrogen production goals.  These statements were accompanied by detailed cautionary language that specifically warned investors about potential supply chain challenges and construction delays.  Plaintiffs suggest that the Company should have updated its risk disclosures, ignoring that Plug Power made three updates to its hydrogen production goal and two updates to its revenue target during the putative class period.  The Third Circuit has rejected similar requests to recognize a "continuous duty to update the public" with "information that would in any way change a reasonable investor's perception of the originally forecasted range."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997).  Plaintiffs also speculate that defendants should have known their targets were too optimistic because certain employees later expressed concerns about specific construction and production timing.  That does not support an inference that the Company's year-end goals were knowingly unachievable when announced.

*Second*, plaintiffs cannot plausibly allege the falsity of statements about plant construction status.  Plaintiffs ask the Court to ignore their own allegations and documents incorporated into

---

[1] Citations to "Compl. ¶ __" refer to paragraphs in the second amended complaint, D.I. 67. Citations to Defs. Br. refer to defendants' opening brief in support of their motion to dismiss, D.I. 73.  Citations to "Exh." refer to exhibits to the Request for Judicial Notice dated April 30, 2025, D.I. 74.  Citations to "Pls. Br." refer to plaintiffs' response brief, D.I. 75.

the complaint, which show that Plug Power's Georgia project was under construction when defendants said it was. "When an allegation in the complaint is contradicted by a document incorporated in it by reference, the document controls and the allegation is not accepted as true." *Lungu v. Antares Pharma Inc.*, 2022 WL 212309, at \*12 n.14 (3d Cir. Jan. 22, 2022).

*Third*, the allegations do not establish a "strong" inference of scienter. Plaintiffs admit that they have not alleged any defendant's motive to defraud, meaning that "their circumstantial evidence of fraud must be correspondingly greater." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). Instead, the complaint alleges that defendants repeatedly discussed the supply chain hurdles Plug Power experienced throughout 2022 and revised the Company's year-end revenue goal twice and its hydrogen production target three times during the putative class period as business challenges increased. That is the opposite of fraud.

## <u>ARGUMENT</u>

### I.     Plaintiffs Have Not Stated a Claim Based on Forward-Looking Statements.

Plaintiffs concede that nearly all the challenged statements were forward-looking. *See* Pls. Br. at 15 (acknowledging that statements regarding revenue and hydrogen production targets are subject to PSLRA safe harbor). Those statements are not actionable for two independent reasons: they were "accompanied by meaningful cautionary language," and plaintiffs cannot establish actual knowledge of falsity as to any of them. *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at \*14 (D.N.J. July 22, 2015) (citing *Slayton*, 604 F.3d at 766); *see* 15 U.S.C. § 78u-5(c); *see also* Opp. at 15 (acknowledging requirement to plead both elements).

#### A.     Goals Were Accompanied by Meaningful, Tailored Cautionary Language.

Plaintiffs appear to abandon any claims based on statements in January 2022 discussing Plug Power's year-end revenue and hydrogen production goals because they do not challenge the sufficiency of the accompanying risk factors. *See* Defs. Br. at 11 n.4 (listing disclosures). For the

remaining forward-looking statements, the opposition again cherry-picks snippets from the Company's detailed risk disclosures to suggest that they were "not meaningful." Pls. Br. at 15-19. The risk factors, when considered in their entirety, show otherwise.[2]

With respect to its 2022 revenue goals, Plug Power cautioned:

- The failure of a supplier to develop and supply components in a timely manner or at all, or to develop or supply components that meet our . . . requirements . . . could impair our ability to manufacture our products or could increase our cost of production.

- Our ability to source parts and raw materials from our suppliers could be disrupted or delayed in our supply chain which could adversely affect our results[.]

- We expect that these challenges [posed by global supply chains] could continue to have an impact on our business for the foreseeable future.

- A slowdown, delay or reduction in a customer's orders could result in . . . unexpected quarterly fluctuations in our operating results.

- Some of the orders we accept from customers . . . may be cancelled[.]

Exh. 6 at 16-18, 25. Plaintiffs challenge Plug Power's year-end revenue targets precisely because these risks later materialized. *See* Compl. ¶¶ 158, 158(c)-(d), (f), 159(a)-(b), 164 (manufacturing and supply chain issues); *id.* ¶ 158(b), (e), (g)-(h) (parts shortages); *id.* ¶¶ 158(c)-(d); *id.* ¶¶ 159(a)-(b) (customer postponement of projects into later periods).

With respect to its hydrogen plant construction and production goals, the Company warned:

- [Plug Power] is developing and constructing green hydrogen production facilities at locations across the United States and Canada. Our ability to successfully complete and operate these projects is not guaranteed. These projects will impact our ability to meet and supplement the hydrogen demands for our products and services, for both existing and prospective customers. Our hydrogen production projects are dependent, in part, upon the Company's ability to meet our internal demand for electrolyzers required for such projects.

---

[2] Plaintiffs again assert, without support, that the year-end goals "lacked a reasonable basis," Pls. Br. at 11, suggesting speakers did not believe the goals when they were announced. But under the safe harbor, whether defendants "believed th[e] statement[s] to be true at the time is irrelevant, as long as there was sufficient 'meaningful cautionary language.'" *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 503 (3d Cir. 2016).

- The timing and cost to complete the construction of our hydrogen production projects are subject to a number of factors outside of our control and such projects may take longer and cost more to complete and become operational than we expect.

- We may be unable to successfully execute and operate our green hydrogen production projects and such projects may cost more and take longer to complete than we expect.

Exh. 6 at 16. Plaintiffs challenge the Company's 2022 hydrogen production goals based on the alleged materialization of these exact risks. *See* Compl. ¶¶ 154, 158(a), (b), (c) ("problems" with electrolyzer shortages and delays in hydrogen plant construction and hydrogen production).[3]

*First*, plaintiffs incorrectly suggest that these statements "merely reflect the truism for any company that its results could be unfavorable." Pls. Br. at 16. In fact, the statements "detailed a list of specific factors and uncertainties that could affect [the Company's] future economic performance[.]" *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 535 (D.N.J. 2010). The risk factor disclosures were not "a vague blanket disclaimer, but rather, [were] tailored specifically to risks associated with [Plug Power's] financial projections" and "alert[ed] shareholders to the specific sources of that risk – such as loss or delay of projects, changes in the scope of projects, outright cancellation, and variations in timing and progress." *Id.* at 536 (similar cautionary language immunized challenged projections) (quoting *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 256 (3d Cir. 2009)); *see Johansson v. Ferrari*, 2015 WL 5000848, at *8 (D. Del. Aug. 20, 2015) (citing warnings as to "difficulty of commercializing" product and "gaining market acceptance"); Defs. Br. at 11 (collecting cases).

*Second*, plaintiffs mischaracterize the disclosures, asserting that they "described as hypothetical risks that had already occurred and were continuing[.]" Pls. Br. at 16-17. However,

---

[3] Plug Power's disclosures were far more specific than those in plaintiffs' citations. *See Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 599 (7th Cir. 2006) (generalized warning of potential "downturn in the telecommunications industry" did not warn of problems with specific products at issue); *In re: Enzymotec Sec. Litig.*, 2015 WL 8784065, at *11 (D.N.J. Dec. 15, 2015) (vague warning of "increasing government regulations").

4

Plug Power disclosed that *existing* "significant challenges for global supply chains" already "*have negatively impacted our results of operations*" and that it "expect[s] that *these challenges will continue to have an impact on our businesses for the foreseeable future*." Exh. 6 at 15 (emphasis added); *see id.* at 16-17 (warning that Company's "ability to source parts and raw materials" already is hampered and that that "these challenges could continue to have an impact on our businesses"); Exh. 17 at 20 (Company already had "experienced supply chain issues"). Plaintiffs argue that the nearly identical risk disclosures in *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021) were sufficient because "Tesla expressly disclosed that it had already experienced the problems at issue." Pls. Br. at 18 n.9. That is also what Plug Power disclosed here.

Plaintiffs' argument also fails for risk factor disclosures regarding hydrogen production and plant construction. Plaintiffs do not challenge the risk factors in the Company's Form 10-K/A filed on May 14, 2021. *See* Exh. 1 at 4-8, 14-31. The Company updated its risk disclosures in its Form 10-K filed on March 1, 2022. *See* Exh. 6 at 3-6, 15-34. No concurrent facts contradict those disclosures.[4] Plaintiffs allege that CW1 did not tell management that hydrogen production targets were "way off" until months later, in May or June 2022. Compl. ¶ 84. Similarly, CW2's speculation that "senior management knew" that hydrogen production estimates were "impossible" was allegedly in "June or July of 2022." *Id.* ¶ 85. And CW14 allegedly said push outs of customer orders did not begin until "March 2022." *Id.* ¶ 118. Plaintiffs must "cit[e]

---

[4] In contrast, in the cases plaintiffs cite, undisclosed adverse events already had occurred when risk factors were issued. *See, e.g.*, *Enzymotec*, 2015 WL 8784065, at *11 (adverse regulation took effect six weeks before risk disclosure); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 192 (D.N.J. 2022) (FDA guidance predated risk disclosure by several months); *In re Horsehead Holding Corp. Sec. Litig.*, 2018 WL 4838234, at *13 (D. Del. Oct. 4, 2018) (specific fact allegations showed issue predated risk disclosure), *R&R adopted*, 2019 WL 1409454 (D. Del. Mar. 28, 2019); *see also* Opp. at 17 n.8 (collecting cases with similar facts). *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 491 (W.D. Pa. 2020), and *Curran v. Freshpet, Inc.*, 2018 WL 394878, at *4-5 (D.N.J. Jan. 9, 2018), are inapposite because the challenged statements were of existing fact, an argument plaintiffs here have abandoned.

contemporaneous sources," not "rely on conjecture based on subsequent events." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 242-44 (3d Cir. 2017) (no allegations that sales were adversely affected "at the time the risk disclosures were made"); *see Mallozzi v. Innovative Indus. Props., Inc.*, 2023 WL 6121499, at \*8 (D.N.J. Sept. 19, 2023) (plaintiffs did not plead "how . . . specific Risk Warnings [were] false or misleading when they were made").

*Third*, plaintiffs' contention that the risk factor warnings were "not updated," Pls. Br. at 18 & n.9, ignores their own allegations that the Company repeatedly revised its year-end goals during the putative class period. The complaint acknowledges that Plug Power updated its revenue goal in October 2022 and "attributed this revised guidance to 'some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues,'" and further revised the goal in January 2023 as those developments continued. Compl. ¶ 163(a)-(c). It made similar updates to its hydrogen production goals. *Id.* ¶¶ 150(a)-(c), 151, 171-72, 184 (updating goal from 70TPD liquid hydrogen to 70TPD liquid/gas mix, to 45-50TPD). In other words, when certain risks that the Company cautioned about materialized, Plug Power revised its year-end goals to account for the materialization of those risks.

The Third Circuit has rejected "the claim . . . that the disclosure of a single specific forecast produced a continuous duty to update the public with either forecasts or hard information that would in any way change a reasonable investor's perception of the originally forecasted range." *Burlington Coat Factory*, 114 F.3d at 1432 ("We decline to hold that the disclosure of a single, ordinary earnings forecast can produce such an expansive set of disclosure obligations."); *see In re PayPal Holdings Inc. Sec. Litig.*, 2025 WL 325603, at \*18 n.19 (D.N.J. Jan. 29, 2025) (no "duty to update [defendants'] projections if they were made 'reasonably and in good faith'"); *Zucker v. Quasha*, 891 F. Supp. 1010, 1015 (D.N.J. 1995) (no duty to disclose "a materially adverse trend" for a quarter in progress), *aff'd*, 82 F.3d 408 (3d Cir. 1996). Plug Power issued periodic disclosures

6

updating its goals based on developments during a given quarter. Nothing further is required. *Gallagher v. Abbott Labs*, 269 F.3d 806, 809-10 (7th Cir. 2001) ("a corporation does not commit fraud by standing on its rights under a periodic-disclosure system").[5]

### B. No Allegations that Year-End Goals Were Knowingly Unachievable.

Plaintiffs' claims based on forward-looking statements separately are inactionable because plaintiffs do not plausibly allege that any statement was made with "actual knowledge of its falsehood." *Cooper Tire*, 834 F.3d at 491 (safe harbor "immunize[s] any forward-looking statement" that "*either*" is "accompanied by meaningful cautionary statements," or was not "made with actual knowledge . . . that the statement was false") (quoting § 78u-5(c)(1)); *see infra* at 10-15 (discussing lack of plausible allegations of scienter).

### C. Plaintiffs Have Not Alleged that Defendants' Opinions Were False.

Given plaintiffs' concession that all statements concerning year-end revenue and hydrogen production goals are subject to the PSLRA safe harbor, the Court need not decide whether the statements also were protected by the heightened pleading standard applicable to statements of opinion. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). Regardless, plaintiffs could not make the required showing.

A plaintiff challenging an opinion statement on an omission theory must show that "undisclosed fact[s] made it ***impossible*** for the speaker's opinion to be correct." *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at *13 (W.D. Pa. May 18, 2023) (emphasis added). No plausibly alleged facts suggest that the Company's goals, as frequently revised during the putative class period, were "impossible" when announced. *Id.* And allegations that some former employees

---

[5] Nor did the Company's risk disclosures become ineffective because some of the risks later materialized. Investors were warned that if *further* supply chain or construction delays occurred, the updated forecasts could become inaccurate. *See Tesla*, 985 F.3d at 1195-96 (disclosure of problems deemed to update risk disclosures).

purportedly had different opinions about the timing for certain specific projects do not render misleading any statements about the Company's overall year-end goals. *Omnicare*, 575 U.S. at 190 (opinion statement not "misleading" just because one employee had a different view, even if their "position ultimately proved correct").

## II.    Plaintiffs Have Not Alleged Falsity for Any Statement of Presently Existing Fact.

*First*, plaintiffs challenge statements in January and March 2022 that a liquid hydrogen plant was "being constructed" and "under construction" in Georgia. Pls. Br. at 8-9. Plaintiffs' allegations and documents incorporated into the complaint show that these statements were true. Plug Power's March 1, 2022 investor letter contains an image of the Georgia plant under construction. *See* Exh. 4 at 5. Plaintiffs also allege that "pipes" for electrolyzers were installed at the site by May 2022, showing that construction was progressing. Compl. ¶ 86.

Plaintiffs incorrectly suggest that considering the image in the investor letter would create "fact disputes that cannot be decided on the pleadings." Pls. Br. at 9-10. The investor letter is cited and quoted in the complaint repeatedly, *see, e.g.*, ¶¶ 132, 134-36, 143(c)-(d), and is incorporated into the pleading for all purposes. *See Lungu*, 2022 WL 212309, at *12 n.14. "When an allegation in the complaint is contradicted by a document incorporated in it by reference, the document controls and the allegation is not accepted as true." *Id.* (collecting cases).

Plaintiffs next assert that the pipes and construction photograph related to the Company's "gas hydrogen project" and not the liquid hydrogen plant. Pls. Br. at 9-10. No allegations support that assertion, and "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). In any event, that would not conflict with defendants' statements even if correct. The Georgia site included both gas and liquid hydrogen production capabilities – indeed, liquid hydrogen is made from gaseous hydrogen. *See*

8

Exh. 4 at 5; Exh. 9 at 5; Exh. 12 at 10; Exh. 16 at 10; Exh. 18 at 3. Plaintiffs concede that the projects were "co-located" – precisely because they were so intertwined. Pls. Br. at 9.

Plaintiffs also contend that Plug Power admitted that construction did not begin until later periods. *See id.* (subsequent statements that the plant "is being completed in eleven months," being finished in "18 months," and "coming online in 12 months since we actually issued the [EPC] contract"). But these out-of-context snippets do not identify a project start or end date or when the EPC contract was issued, and thus do not conflict with the challenged statements, as plaintiffs mistakenly contend. *See Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 538 (5th Cir. 2008) (statements not actionable where – like here – they were "susceptible to many interpretations, including innocent ones"). This type of "post hoc scouring of countless pages of documents for a stray and inartfully phrased comment that can be argued to be technically false seems like just the sort of litigation maneuver the PSLRA was meant to eliminate." *Cooper Tire*, 834 F.3d at 499.[6]

*Second*, plaintiffs contend that a statement on August 9, 2022 that "gaseous production" was "online" at the Georgia facility was false, even while acknowledging that, during an earlier test, electrolyzers *were* successfully turned on and produced hydrogen. Pls. Br. at 10-11. Plaintiffs suggest this test was insufficient to support the challenged statement. *Id.* But the CW who was the purported source for this allegation admitted they "did not know whether" the alleged test "served as the basis for the Company's public announcement" and was "unaware whether Plug did anything else between [this successful test] and Plug's announcement that the plant was online." Compl. ¶ 89. Plaintiffs' cited cases concerning whether CW statements are sufficiently

---

[6] Plaintiffs' own allegations show the fallacy in their argument that construction could not have started before an EPC contract was issued. *See* Compl. ¶ 135 n.5 (EPC contract "represents *almost* the entire project lifecycle") (emphasis added).

9

corroborated, *see* Pls. Br. at 11 & n.5, are irrelevant given their CW's admitted inability to connect the alleged test to the challenged statement.[7]

### III. Plaintiffs Also Have Not Alleged the Required "Strong" Inference of Scienter.

The opposition makes plain plaintiffs' failure to plead a "strong" inference of a defendant's scienter, 15 U.S.C. § 78u-4(b)(2)(A), which for forward-looking statements requires "knowing falsity," *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 209 (E.D. Pa. 2021), and for all other statements requires "culpability [that] closely approaches . . . conscious deception," *In re Digital Island Sec. Litig.*, 357 F. 3d 322, 332 (3d Cir. 2004).  Because plaintiffs admit they have not alleged that any defendant had a motive to defraud, Pls. Br. at 21, "their circumstantial evidence of fraud must be correspondingly greater." *Slayton*, 604 F.3d at 776.  The complaint falls far short of meeting these demanding standards.

#### A. No Scienter for Forward-Looking Revenue and Hydrogen Production Goals.

Plaintiffs' rote suggestions that defendants "should have known" or "had access" to contrary information does not assist them.  *See* Pls. Br. at 21.  For "forward-looking statement," the "safe harbor" "specifies an 'actual knowledge'" standard that "is stricter than that for statements of current fact," and mere access to information is insufficient. *Avaya*, 564 F.3d at 273-74.  Plaintiffs do not allege any specific contemporaneous facts known to any defendants that rendered the Company's year-end goals unachievable when announced.

*First*, plaintiffs do not explain how statements in "April or May 2021" that "hydrogen production schedules were unrealistic" call into question year-end goals for 2022 that were issued

---

[7] Plaintiffs also suggest that the statement was false because the "facility was not producing any *meaningful* amount of hydrogen."  Pls. Br. at 10 (emphasis added).  "But that is not what the [challenged] statement says." *Tesla*, 985 F.3d at 1193.  Plug Power only confirmed that the plant was online and that it would produce more hydrogen in later periods.  Compl. ¶ 139.  "[T]he complaint does not plead any facts to establish that *that* representation was false" or misleading. *Tesla*, 985 F.3d at 1193 (rejecting similar attempt to rewrite defendants' public statement).

more than eight months later. Pls. Br. at 22. The complaint does not allege what was "unrealistic" about the 2021 schedule or how it compared with the 2022 goal first announced in January 2022. Plaintiffs also cannot challenge that January goal based on a claim that "senior management knew by June or July 2022" that the "target was impossible to meet." Pls. Br. at 23. Scienter is assessed at the time a statement is made, and "liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002). Assertions that employees quit "in protest," Pls. Br. at 12, 22, 25, also do not support an inference of knowing falsity because – unlike the cases plaintiffs cite – there are no allegations in this case that any defendant knew of these alleged departures, much less the purported reason for them.[8]

Plaintiffs' remaining arguments rely on undated CW conjecture about what unnamed "senior management" purportedly knew. *See* Pls. Br. at 22-23. The securities laws do not permit such "vague" group pleading "where there are no allegations that any defendant knew a particular statement was false when made." *In re Synchronoss Techs., Inc. Sec. Litig.*, 2019 WL 2849933, at *10 (D.N.J. July 2, 2019); *see Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 446 (E.D. Pa. 2019) (discounting "vague references to 'corporate' and 'UHS executives'"); *In re Cancer Genetics, Inc. Sec. Litig.*, 2020 WL 3276740, at *5 (D.N.J. Feb. 26, 2020) (ignoring "generic and conclusory" CW allegations and those "based upon rumor or conjecture"); *Wu v. GSX Techedu Inc.*, 2023 WL 2207422 (D.N.J. Feb. 24, 2023) (similar).

But even if those vague allegations were credited, they amount – at most – to disagreements between employees and executives about whether the Company could achieve specific milestones.

_____

[8] CW1 denied that they told "senior management" that "projections for hydrogen production were unattainable and 'hilariously off'" and informed plaintiffs they did not "quit in protest." Pls. Br. 12, 23. CW1 said, instead, that they "left Plug for another job." D.I. 49 at 3. Plaintiffs' arguments based on these repudiated allegations should not be credited. *City of Livonia Emps.' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 760 (7th Cir. 2013).

11

*See* Pls. Br. at 12-13, 22-23 (disagreements about construction and production schedules for various projects).  A mere "disagreement of some [] employees with the company's interpretation of the [data] is not sufficient" to allege scienter.  *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014); *see Tesla*, 985 F.3d at 1194 (plaintiffs failed to allege that defendants ever accepted employee's views that goals were "impossible").[9]

*Second*, plaintiffs cannot assert that Plug Power's revenue projections were knowingly false based on claims about a purported internal call that differed from Plug's 2022 revenue goal. *See* Pls. Br. at 13-14, 23-24.  The opposition misrepresents the underlying allegations, which are based on a single CW's equivocal and uncorroborated recollection of a company-wide video call that no other source confirmed.  That "witness" could not say when the call occurred (between "August and late-September"), the issues discussed ("the Company was behind on either its sales or revenue targets"), or "the exact figures."  Compl. ¶ 128.  This "combination of vague allegations by confidential witnesses and the speculative inferences" does not support the required "strong inference" of scienter, *Becton*, 2021 WL 4191467, at *14 (cited by plaintiffs), much less an inference of knowing falsity.  But even if considered, this argument does not help plaintiffs because the alleged presentation happened long after the Company initially announced its revenue goal, which Plug Power lowered in October 2022.  *See* Compl. ¶ 163(a).

*Third*, plaintiffs' references to supply chain challenges and construction delays do not support an inference of knowing falsity.  *See* Opp. at 13, 24 & n.14.  The Company disclosed those problems and repeatedly talked about them as the year progressed.  *See* Exh. 6 at 17-18 (risk factor warning regarding ongoing supply chain delays); *see also* Defs. Br. at 4-5.  Between August and

---

[9] The assertion that Plug Power lowered its "internal production forecast for fuel cells" in "Q2" does not support plaintiffs' fraud claim.  *See* Pls. Br. at 24.  "[K]nowledge that sales from one source might decrease is not the same as actual knowledge that the company's overall sales projections are false."  *Williams*, 869 F.3d at 246 (citation omitted).

November 2022, the Company adjusted its revenue goal twice and its hydrogen production target three times, attributing these changes to worsening supply chain delays, parts shortages, and construction setbacks. *See* Comp. ¶¶ 150 (a)-(c), 151, 163(a)-(c), 171-73, 179, 184; *see also* Exh. 9 at 5-7, Exh. 11 at 1, Exh. 14 at 7. "[T]he more plausible inference . . . is that [defendants] accounted for the change[s]" when updating Company "projections." *Williams*, 869 F.3d at 246; *see Tesla*, 985 F.3d at 1195-96 (updates undercut inference of fraud); *see also* Defs. Br. at 27-28 (collecting cases). Plaintiffs inaccurately contend that these later revisions were "incremental corrective disclosures." Pls. Br. at 25. But a "later revision of . . . projections does not sufficiently show that [a defendant] knew the projections were false when made." *Williams*, 869 F.3d at 246.[10]

The challenge to Plug Power's revenue target is especially implausible because the Company exceeded its revenue goal in 2021, *see* Exh. 21 at 8; Exh. 4 at 1 ($502 million in revenue achieved vs. $475 million in gross billing projected), and reported strong financial performance through the first half of 2022, *see* Exh. 9 at 12. *Avaya*, 564 F.3d at 275 (exceeding expectations in prior periods undermines inference of scienter for such targets in later periods).

---

[10] Plaintiffs mistakenly rely on *In re Advance Auto Parts, Inc., Sec. Litig.*, where the defendants did not invoke the PSLRA safe harbor – a point that plaintiffs here concede. 2020 WL 599543, at \*3 (D. Del. Feb. 7, 2020). Moreover, the forecasts challenged in *Advance Auto Parts* were contrary to an *existing* "internal forecast prepared by the Company's Finance Department." *Id.* No similar, contrary internal revenue or hydrogen production forecasts are alleged here, much less ones that pre-date the challenged public statements. The decision in *Selbst v. McDonald's Corp.*, 2005 WL 2319936 (N.D. Ill. Sept. 21, 2005), is distinguishable for the same reason. *Id.* at \*18 (alleging specific "internal forecasts" that "projected declining systemwide sales," which directly contradicted public forecasts). Similarly, in *In re AT&T Corp. Sec. Litig.* the plaintiffs plausibly alleged that the defendants knew about and failed to disclose specific "scams" that caused "untrue inflation of the wireless subscriber numbers" that the company reported. 2002 WL 31190863, at \*15 (D.N.J. Jan. 30, 2002). So too in *Becton*, where the defendant knew about specific adverse FDA comments pre-dating his statement. 620 F. Supp. 3d at 194. And in *EQT*, where the defendants *and the SEC* received a letter contradicting the challenged statements *before* they were made. 504 F. Supp. 3d at 474. Finally, in *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, plaintiffs alleged specific meetings and reports informing the defendant of "declining sales" and "decreasing margins." 2011 WL 2444675 (D. Del. June 14, 2011). That case also involved substantial stock sales, unlike here.

**B.**      **No Scienter for Statements Regarding Plant Construction and Production.**

Plaintiffs' scienter arguments for two statements about Plug Power's Georgia hydrogen project cannot escape their own allegations and the documents incorporated into the complaint. It is unclear how the statements that the plant is under construction could be made with reckless disregard verging on "conscious deception," *Digital Island*, 357 F. 3d at 332, when images plainly show the site under construction. *See supra* at 8. Given this fact, and plaintiffs' own argument that defendants were "knowledgeable about [the project's] construction and its operations," Pls. Br. at 22, the only plausible inference is that defendants believed their statements to be true. Plaintiffs do not make any cogent scienter arguments for the statement about the plant being "online" in August 2025. Assertions about a purportedly deficient "test" are irrelevant because the complaint does not allege any defendant's knowledge of that test. Even the CW on whose allegations plaintiffs rely admitted they did not know whether this "test" was the basis for the Company's challenged statement. *See supra* at 9.[11]

Finally, plaintiffs' failure to plead scienter as to any individual defendant also refutes their argument that they have pleaded corporate scienter as to the Company. Pls. Br. at 30.

**C.**      **The "Confidential Witness" Allegations Should Be Steeply Discounted.**

The opposition does not address the central problem with plaintiffs' "confidential witness" allegations: "not one witness claims to have met, emailed with, spoken to, or otherwise heard or read anything by, [any defendant] about" the Company's revenue and hydrogen production goals, which does not "raise a strong inference of scienter that [any defendants] knew their public statements and disclosures were false." *Pharmanet*, 720 F. Supp. 2d at 555. Even applying a

---

[11] *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *9 (D.N.J. Aug. 28, 2017), does not assist plaintiffs given plausible allegations in that case concerning a contemporaneous failed clinical trial and adverse FDA action. There are no similar allegations of contemporary contrary information here.

"holistic, multifactor assessment" that does not require a "precise date," Pls. Br. at 27, plaintiffs' use of broad "date ranges" for when events allegedly occurred does not demonstrate that any "statements were false or misleading *when they were made*[.]" *Plug Power*, 2025 WL 388705, at *2 (emphasis added).[12]

## IV.   Plaintiffs Have Not Pled Scheme Liability or Controlling Person Liability.

Plaintiffs cannot base a scheme claim on conclusory allegations of purportedly "manipulative" acts that had the primary purpose of furthering the alleged misstatements. *Takata v. Riot Blockchain, Inc.*, 2023 WL 7133219, at *11 (D.N.J. Aug. 25, 2023). Constructing electrolyzer frames while waiting for equipment to be delivered and deeming a plant operational after conducting a successful test is not fraud, especially when such activities were never publicly disclosed to the market. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 149 (2008) (no scheme liability absent public deception). The complaint also fails to allege "which defendants performed" the allegedly deceptive acts or the effect of the scheme "on the securities at issue." *S.E.C. v. Hug*, 2022 WL 855659, at *8 (D.N.J. Mar. 22, 2022).[13]

Separately, plaintiffs' "controlling person" claim under Section 20(a) should be dismissed for failure to allege a primary violation. *Williams*, 869 F.3d at 246.

### CONCLUSION

The second amended complaint should be dismissed with prejudice.

---

[12] Plaintiffs' cases involved far different allegations. *See Becton*, 620 F. Supp. 3d at 194 (defendant "was informed before the ship hold was announced"); *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 659 (D.N.J. 2021) (same); *Mylan*, 2023 WL 3539371, at *19 (FDA – not CW – provided "direct warnings to Mylan's senior management"); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 483 (S.D. Tex. 2016) (CW directly met with defendant multiple times).

[13] This case bears no resemblance to *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026565, at *16 (D.N.J. June 5, 2020), where an executive allegedly participated in and concealed a "bribery scheme," or *Yoshikawa v. Exxon Mobil Corp.*, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023), where the complaint alleged knowing "falsification of internal documents."

15

Dated: July 18, 2025

Of Counsel:

John J. Clarke, Jr.*
john.clarke@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
(212) 335-4500


Yan Grinblat*
yan.grinblat@us.dlapiper.com
DLA PIPER LLP (US)
444 W. Lake Street, Suite 900
Chicago, Illinois 60606
(312) 368-4000
* Admitted *pro hac vice*

Respectfully submitted,

DLA PIPER LLP (US)

By:   */s/ Ronald N. Brown, III*
      Ronald N. Brown, III (Bar No. 4831)
      ronald.brown@us.dlapiper.com
      Peter H. Kyle (Bar No. 5918)
      peter.kyle@us.dlapiper.com
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
(302) 468-5700


*Counsel for Defendant Plug Power Inc.*


RICHARDS, LAYTON, & FINGER P.A

 By:   */s/ Rudolf Koch*
      Rudolf Koch (Bar No. 4947)
      koch@rlf.com
      Jason J. Rawnsley (Bar No. 5379)
      rawnsley@rlf.com
 920 North King Street
 Wilmington, Delaware 19801
 (302) 651-7700

*Counsel for Defendants*
*Andrew Marsh, Paul B. Middleton,*
*and Sanjay Shrestha*

16