**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| In re PLUG POWER INC. SECURITIES | ) | Case No. 23-409-JLH |
| LITIGATION | ) | |
| | ) | |

**<u>MEMORANDUM ORDER</u>**

This is a securities fraud class action.  Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Plaintiffs are purchasers of Plug Power Inc. common stock, and Defendants are Plug Power Inc. ("the Company" or "Plug") and its officers: Andrew Marsh,[1] Paul B. Middleton,[2] and Sanjay Shrestha.[3]  (SACAC ¶¶ 19–24.)

Previously, the Court dismissed the Amended Class Action Complaint ("ACAC") for failure to state a claim and granted Plaintiffs leave to amend.  (D.I. 65.)   The operative pleading is the Second Amended Class Action Complaint.  (D.I. 67 ("SACAC").)  Defendants have moved to dismiss the SACAC for failure to state a claim.  (D.I. 72.)  For the reasons explained below, the motion is GRANTED-IN-PART and DENIED-IN-PART.

---

[1] Defendant Andrew Marsh is, and at all relevant times was, the Company's Chief Executive Officer ("CEO").  (SACAC ¶ 21.)

[2] Defendant Paul B. Middleton is, and at all relevant times was, the Company's Chief Financial Officer ("CFO").  (SACAC ¶ 22.)

[3] Defendant Sanjay Shrestha was, at all relevant times, the Company's Chief Strategy Officer and General Manager of Energy Solutions, and is, as of the date of the SACAC, the Company's President.  (SACAC ¶ 24.)

1.    I incorporate herein the legal standards set forth in my order dismissing the ACAC. (D.I. 65 ("ACAC Dismissal Order").)  I write for the parties and assume familiarity with the SACAC, which contains 251 paragraphs spanning 101 pages.

2.    In my order dismissing the ACAC, I pointed out that the ACAC failed to comply with the Private Securities Litigation Reform Act ("PSLRA"), including because it failed to specifically identify which statements Plaintiffs alleged were misleading.  (ACAC Dismissal Order ¶ 5); 15 U.S.C. § 78u-4(b)(1).  I further ordered that, if Plaintiffs filed an amended pleading that Defendants sought to dismiss for failure to state a claim, the parties must meet and confer regarding which statements Plaintiffs wished the Court to consider.  (ACAC Dismissal Order ¶ 5.)

3.    Plaintiffs filed the SACAC on February 25, 2025.  On March 14, 2025, the parties filed a stipulation identifying nine paragraphs of the SACAC that contain the "representative statements to be addressed in the forthcoming motion to dismiss briefing":  paragraphs 131, 132, 139, 150(a), 150(c), 152, 157(b), 157(f), and 163(b).  (D.I. 70 ¶ 1.)  The parties agree that the nine challenged statements can be logically divided into three groups: (1) statements about construction and operation of the Company's Georgia hydrogen production facility; (2) statements of the Company's hydrogen production goals; and (3) statements of the Company's revenue projections.

4.    Defendants argue that there is no viable claim under § 10(b) because (1) the identified statements are not false or misleading and/or are not actionable because they are forward-looking, and (2) the SACAC fails to allege sufficient facts giving rise to a strong inference of scienter.

5.    **The First Group of Statements**.  The statements in paragraphs 131, 132, and 139 of the SACAC relate to construction and operation of the Georgia facility:

- On a January 19, 2022 call with analysts, Defendant Marsh stated that the Plug has "another site that's being constructed in Georgia . . . ."  (SACAC ¶ 131.)

2

- In a March 1, 2022 investor letter signed by Defendants Marsh and Middleton, Plug stated that the Georgia facility "is also under construction for a 15 TPD [tons per day] liquid plant." (SACAC ¶ 132 (alteration in original).)

- In an August 9, 2022 investor letter signed by Defendants Marsh and Middleton, Plug stated that there were "2.5 TPD [tons per day] Green gaseous production online at Georgia facility." (SACAC ¶ 139 (alteration in original).)

Plaintiffs contend that the first two statements must be false because (1) in May 2023, the Company released a promotional video stating that the plant "is being completed in eleven months" (SACAC ¶ 134); (2) in August 2023, Defendant Shrestha stated that hydrogen production had not yet begun but that the "plant is still coming online in 12 months" based on the issuance of the "engineering, procurement, and construction" contract (SACAC ¶ 135); and (3) in January 2024, the Company "indicated that the plant had been finished in '18 months,' placing the start of construction in summer 2022." (SACAC ¶ 136.)  But the fact that in May 2023 the plant was expected to be completed in eleven months, or that in August 2023 the plant was expected to come online in 12 months, or that by January 2024 the plant had been finished in 18 months is irrelevant to establishing whether Defendants Marsh and Middleton's statements in January and March 2022 were false or misleading *when made*.  Indeed, the SACAC acknowledges that "pipes had been installed" at the site by "May 2022" (suggesting that construction began earlier) (SACAC ¶ 86.)

6.    Plaintiffs allege that the August 2022 statement was false because, according to Witness 3, an unidentified inspector told her that the Company turned on the equipment then immediately turned it off once there was a change in the display readings, deeming it operational without measuring any amount of hydrogen.  (SACAC ¶ 141.)  But Witness 3 admitted she did not know whether there was an intervening event that could have given rise to the 2.5 TPD metric, or even whether the information relayed to her by the inspector was the basis for Defendants' announcement.  Witness 3's statement is therefore based on only speculation, which is insufficient

3

to state a plausible claim under the PSLRA.[4]  Each of these challenged statements fails on falsity and therefore I do not need to reach the issue of scienter.

7.      **The Second Group of Statements**.  These statements—contained in paragraphs 150(a), 150(c), and 152 of the SAC—relate to the Company's target goal for the amount of hydrogen being commissioned:

- In an August 9, 2022 investor letter signed by Defendants Marsh and Middleton, Plug stated that it was "on track to commission 70TPD of green hydrogen by year end" (SACAC ¶ 150(a)), and again that it was "on track to achieve our target of commissioning 70TPD by YE 2022" (SACAC ¶ 150(c)).

- On November 8, 2022, in an investor letter signed by Defendants Marsh and Middleton, Plug stated that it "plans to commission 15TPD by YE22" at the Georgia plant and that, in general, the Company "remain[s] confident to exit 2022 with 45-50 TPD of hydrogen generation plants being commissioned."  (SACAC ¶ 152.)

8.      Plaintiffs allege that these statements were false when made because the Company was not actually on track to reach those goals.  (SACAC ¶ 153.)  Defendants argue that these are "forward-looking" statements, and I agree.  (D.I. 73 ("Def. Br.") at 8–9.)  *See Inst. Invs. Grp. v. Avaya, Inc*, 564 F.3d 242, 255 (3d Cir. 2009) (statements that company was "on track" could not "meaningfully be distinguished from the future projection of which they are a part").  To be actionable, then, Plaintiffs must establish either that the statements lacked meaningful cautionary language or that Defendants had actual knowledge of the falsity of the statements.  15 U.S.C. § 78u-5(c)(1)(A); *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 491 (3d Cir. 2016).

---

[4] Witness 2's "corroboration" is not corroborative at all because the SACAC simply alleges that Witness 2 "was aware" of the situation.  (SACAC ¶ 90.)  But the SACAC does not allege the basis of Witness 2's knowledge; for example, whether she was present for the inspection or spoke with the inspector.  Such an allegation of general awareness is insufficient to establish the reliability of Witness 2's statement. *See Inst. Invs. Grp. v. Avaya, Inc*, 564 F.3d 242, 263 (3d Cir. 2009) (explaining that the complaint must describe "*how* each CW had access to such information" (emphasis added)).

9.      Defendants argue that the statements were accompanied by meaningful cautionary language and point to the multiple risk disclosures the Company made in its March 2022 Form 10-K filing.[5]  (Def. Br. at 10–11; D.I. 77 ("Def. Reply") at 5.)  Plaintiffs respond that these disclosures were meaningless because "they were overly general, omitted material adverse facts, and misleadingly described as hypothetical risks that had already occurred . . . ."  (D.I. 75 ("Pl. Opp.") at 15.)

10.      I do not think that the disclosures were "overly general" or "omitted material facts." It is plausible, however, that the hypothetical risks disclosed were rendered meaningless by the time of the August and November statements, because the risks are alleged to have already materialized—thereby making the August and November statements false or misleading.  The March 2022 disclosure stated that the Company "may be unable to successfully execute and operate our green hydrogen production projects and such projects may cost more and take longer to complete  than we expect," and that "[t]he timing and cost to complete the construction of our hydrogen production projects are subject to a number of factors outside of our control and such projects may take longer and cost more to complete and become operational than we expect." (Def. Br. at 10.)

11.       But, according to the SACAC, it was known by June 2022 at the latest that the projects were already severely behind schedule.  Witness 1 is alleged to have told Defendant Marsh in May or June that certain facilities were "three years out in service," making the goals stated in August and November impossible.[6]  (SACAC ¶ 84.)  Additionally, Witness 2 claimed that when

---

[5] Defendants have requested I take judicial notice of this and similar filings.  (D.I. 74.) Plaintiffs do not oppose.  (D.I. 76.)  I will thus grant the request.

[6] Defendants claim that the statements attributed to Witness 1 in the SACAC are unreliable because she later recanted.  (Def. Br. at 16; D.I. 49.)  But that is a classic issue of weight versus

she left the Company in November 2022, the Georgia facility specifically was two years behind schedule.[7] (SACAC ¶ 155.) Witness 2 detailed specific deficiencies with the plant — that it only had one functioning electrolyzer and lacked sufficient capacity to cool and liquefy the hydrogen produced. (*Id.*) Those witness statements, in conjunction with the alleged myriad setbacks and challenges the Company had been facing with respect to the construction of its hydrogen facilities, (*see generally* SACAC §§ B.2 and B.3), suggest that the March 2022 cautionary statements Defendants relied on when making the challenged August and November 2022 statements were meaningless because they failed to disclose then-existing adverse material facts. *See Williams v. Globus Med., Inc.*, 869 F.3d 235, 242 (3d Cir. 2017) ("[A] company may be liable under Section 10b for misleading investors when it describes as hypothetical a risk that has already come to fruition."); *Local 731 I.B. of T. Excavators and Pavers Pension Tr. Fund v. Swanson*, No. 09-799, 2011 WL 2444675, at *13 (D. Del. June 14, 2011) (finding inadequate cautionary statements that failed to disclose the already-manifested risk of a secular decline in the use of printed yellow pages); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 192 (D.N.J. 2022) (finding 10-K disclosures unsatisfactory because the hypothetical risks warned of already materialized).

12.     Even if the cautionary statements were sufficient, the challenged statements would still fall outside the safe harbor provision based on Defendant Marsh's alleged actual knowledge

---

admissibility. It is not for the Court to make credibility determinations at this juncture; the Court must accept well-pleaded factual allegations as true.

[7] I conclude that the SACAC sufficiently pleads Witness 1 and 2's reliability. *See Avaya,* 564 F.3d at 263 (finding the complaint sufficient where it "adequately described the duration of each CW's employment, the time period during which the CWs acquired the relevant information, and how each CW had access to such information").

of their falsity, as relayed by Witness 1.  For all these reasons, I conclude that the August and November 2022 statements are actionable.

13.     **The Third Group of Statements**.  These statements—contained in paragraphs 157(b), 157(f), and 163(b)—pertain to the Company's revenue projections:

- On a January 19, 2022 call with analysts, Defendant Marsh stated, "[D]uring the past years that we've – we gradually upped the targets once the numbers become more and more firm.  And again, we look at the $900 million, $925 million, and I can sit here and say, 'I'm not going to be debating with you guys whether we made it or not.'  As things begun to – as more activity becomes clearer and clearer, I wouldn't be surprised if we, throughout the year, increased numbers if the crystal ball becomes clearer.  I think we all look to this number and said, we're not going to be sweating it.  And so I wouldn't be surprised if gradually throughout the year, we've increased the numbers."  (SACAC ¶ 157(b).)

- On a May 9, 2022 earnings call, Defendant Marsh stated the Company will "deliver our $925 million this year."  (SACAC ¶ 157(f).)

- In the November 8, 2022 investor letter, signed by Defendants Marsh and Middleton, Defendant Plug stated that it "[r]eaffirms recently updated 2022 guidance" that the projected revenue estimate is $810–880 million.  (SACAC ¶ 163(b).)

Each of the statements in this group are forward looking, so I engage in the same analysis as above.

14.     The January 2022 statement is closer to puffery than an actual projection, so it's nonactionable.  *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 65 (D. Del. 2020) ("'[V]ague and general statements of optimism' constitute nonactionable 'puffery.'") (alteration in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1428 n.14 (3d Cir. 1997)).

15.     As for the remaining two statements, Plaintiffs allege that Defendants had actual knowledge that both statements were false because, according to Witness 17, Defendant Marsh announced on an internal company-wide Zoom call that the Company was behind on its sales or revenue targets and was projecting to end the year around $700 million.  (SACAC ¶ 128.)  But

7

that call is not alleged to have occurred until late August or late September 2022; it does not suggest that the May statement was false.[8]  (*Id.*)  The allegations do plausibly suggest that the November 2022 statement was false and that Defendants Marsh and Middleton had actual knowledge of its falsity.[9]

16.     Defendants argue that the § 20(a) claim should be dismissed because the SACAC fails to allege a primary violation of § 10(b).  Because I conclude that the SACAC alleges at least one violation of § 10(b), I will deny the request to dismiss the § 20(a) claim.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion to Dismiss the Second Amended Class Action Complaint for Failure to State a Claim (D.I. 72) is GRANTED-IN-PART and DENIED-IN-PART as follows:

- Defendants' request to dismiss Plaintiffs' § 10(b) claim is GRANTED insofar as the claim is based on the representative statements contained in paragraphs 131, 132, and 139 (statements about construction and operation of the Georgia facility);

- Defendants' request to dismiss Plaintiffs' § 10(b) claim is DENIED insofar as the claim is based on the representative statements contained in paragraphs 150(a),

---

[8] I also conclude that the May statement was accompanied by meaningful cautionary statements, namely the March 2022 disclosure.  Plaintiffs do not point to any materialized risk that would render the cautionary statements meaningless on the date of the May statement.  To the contrary, Defendants note that Plug historically did the majority of its revenue in the second half of the year, which provided assurance about the May forecast.  (Def. Br. at 13.)

[9] If I accept as true—as I must at this stage—that the call referenced by Witness 17 was a company-wide call in which the CEO was speaking, then it is plausible to presume that Defendant Middleton, the CFO, was in attendance.  Also, because the topic deals with year-end revenue projections, a front-of mind topic for the Company as laid out in the SACAC, it is also plausible to presume that the Company's CFO would be aware of a slash in the revenue projection.  *See Williams*, 869 F.3d at 245 (noting that actual knowledge can be inferred if the facts sufficiently support such an inference).

8

150(c), and 152 (statements about Company's target goal for the amount of hydrogen being commissioned);

- Defendants' request to dismiss Plaintiffs' § 10(b) claim is GRANTED insofar as the claim is based on the representative statements contained in paragraphs 157(b) and 157(f) (January and May statements about Company's revenue projections) and DENIED insofar as its claim is based on the representative statements contained in paragraph 163(b) (November statement about Company's revenue projections); and

- Defendants' request to dismiss Plaintiffs' § 20(a) claim is DENIED.

IT IS FURTHER ORDERED that, on or before May 18, 2026, the parties shall jointly prepare and file the following: (i) a proposed Scheduling Order consistent with Judge Hall's "Rule 16 Scheduling Order Non-Patent," and (ii) a letter, not to exceed three pages, setting forth (a) the parties' positions regarding any disputes in the proposed Scheduling Order; and (b) a list of any other issues the parties want to address at the Rule 16 Scheduling Conference.  Thereafter, the Court may schedule a Rule 16 Scheduling Conference to be held with Judge Hall.  The Scheduling Order can be found on Judge Hall's portion of the District Court's website.

Dated: April 20, 2026

_____
The Honorable Jennifer L. Hall
United States District Judge